## Reehling, Assignee, *versus* Byers et al.

1. A son, who was in embarrassed circumstances, was indebted to his father in the sum of $550. To secure the debt the father purchased from the son a tract of land for $1350, deducting therefrom the amount of the son's debt to him, and paying the balance of the purchase-money in cash. This balance the son immediately expended in paying other debts. A few days thereafter another creditor obtained an award against the son, and afterwards a judgment under which the land was sold as the property of the son. The purchaser obtained possession. The father subsequently made an assignment for the benefit of creditors, and his assignee brought ejectment to secure the land. *Held,* that in the absence of evidence of fraudulent intent on the part of the father, the court should have instructed the jury to find for plaintiff.

2. The fact that the son conveyed with intent to defraud was immaterial in the absence of fraudulent intent on the part of the father. And if the motive of the latter was to secure his own debts, his purchase cannot be impeached because he paid the difference between the amount of his debt and the price agreed upon in money. It is the motive of the creditor which is to be looked into, and if that was honest and lawful the intent of the debtor does not enter into the question. One cannot be prejudiced by the fraud of another of which he has no notice.

3. Business dealings between parents and children, and other near relatives, are not *per se* fraudulent; they must be treated just as are the transactions between ordinary debtors and creditors, and where the bona fides of their transactions is attacked the fraud alleged must be clearly proved.

[Reehling v. Byers.]

May 4th 1880.　Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.　SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *York county*: Of May Term 1880, No. 95.

Ejectment by C. F. Reehling, assignee for the benefit of creditors of Isaac Taylor, against William R. Byers, tenant, and the widow and heirs of Joel Brinton, deceased, for two tracts of land in York county.

The material facts were as follows: On the 23d of June 1876, W. H. Taylor conveyed the property in dispute to his father, Isaac Taylor, for a consideration of $1350.　On the 1st of April 1873, W. H. Taylor became surety for one Kurtz, in a note to Joel Brinton, for $1000.　Several years thereafter Kurtz absconded, leaving his debts unpaid.　On the 10th of April 1876, Brinton brought suit on his note, and obtained judgment by arbitration against W. H. Taylor on the 27th of June 1876, for $1134.50. An appeal having been taken, judgment was obtained after trial in court on the 26th of February 1879, for $1174 and costs.　On the 5th of March 1877, a fi. fa. issued on said judgment, and the property conveyed as aforesaid by W. H. Taylor to Isaac Taylor was levied upon and condemned.　On the 2d of June 1877, the property was sold as the property of W. H. Taylor to the plaintiff in the execution, Joel Brinton, for the sum of $722.　After proceedings were had before two justices, W. H. Taylor, as tenant of Isaac Taylor, was ejected by the sheriff, and W. R. Byers, as tenant of Joel Brinton, was put into possession of the premises. On the 28th of December 1877, Isaac Taylor made an assignment for the benefit of creditors to the plaintiff, Reehling, who brought this action on the 25th of January 1878.

It was contended by the defendants that the deed from W. H. Taylor to his father was fraudulent and void as to Joel Brinton.

In relation to this deed the following facts were disclosed by the evidence: On the 12th of April 1868, W. H. Taylor being in need of money in his business, borrowed from his father $1420, for which he gave him his note.　By sundry payments this note was reduced on April 1st 1874, to $550, for which he gave his father a new note.　On the 1st of April 1873, W. H. Taylor was also indebted to his sister in the sum of $589.64, for which he also gave her a note of that date.　In January 1876, she notified her brother that she needed this money, and at that time his father also demanded additional security for his note.　To meet these demands, W. H. Taylor offered to sell the property in dispute to his father for $1350, which was its full value, the purchase-money less the amount of the father's note, to be paid in cash.　In pursuance of this arrangement, on the 23d of June, the conveyance was made.　Isaac Taylor's note amounting with interest to $591.25 was deducted from the purchase-money, and the balance of the

purchase-money $758.75 was paid by him, partly in cash, and partly in United States bonds. In order to raise the money he borrowed from Sarah Meredith $219.25, for which he gave to her his note. Out of said balance of $758.75, W. H. Taylor, on that day, paid the note of Sarah Meredith, amounting with interest, to $704.75, and with the $54, which then remained, he paid other debts.

The defendants offered to prove by a witness on the stand " that he met Taylor at Crull's store, in Newberry, about haymaking (am sure it was before harvest; the weather was warm) in 1876. He said, " You go to Joel Brinton and tell him that I am willing to pay half the amount of that note, so that I can get my property back, if he will settle." He said, " I wouldn't have sold it, only to get out of paying the bail money to Brinton. I would like to have it settled, so that I can get my property back, as I had it before, for this way I can do no business; the way my affairs now are." I said I would go and talk to Joel Brinton, and I went and talked with him a few days afterwards; and after that I came back to Newberry. My best recollection is that I went to his house and told him Joel Brinton said he would have either the whole or none. He appeared sorry that it couldn't be settled."

For the purpose of showing, in connection with the evidence already in evidence on behalf of the defendants, that the object, intent and purpose of the said W. H. Taylor was to hinder and delay Joel Brinton in the collection of his debt; to be followed by evidence of fraudulent collusion between W. H. Taylor and Isaac Taylor, the plaintiff's grantor.

Objected to and evidence admitted. No evidence as to fraudulent collusion was thereafter offered. There was no evidence that W. H. Taylor, at the time of the execution of the deed, had any other indebtedness than that due to his father, sister and Brinton.

When the defendants rested, the plaintiff asked the court to instruct the jury that there was no evidence of fraud to be submitted to them, and they must render a verdict for plaintiff, which the court refused.

The plaintiff, inter alia, presented the following points, which the court refused :

1. That under all the evidence in the case, the verdict should be for the plaintiff.

6. That there is no sufficient evidence in the cause either to implicate Isaac Taylor, the plaintiff's assignor, in any purpose or design, collusion or conspiracy, by purchase of the real estate claimed in this suit from William H. Taylor, to delay, hinder or defraud Joel Brinton, or any other creditor or creditors of said William H. Taylor, or with notice or knowledge of such purpose or design, to authorize the jury to find a verdict for the defendants, and that the verdict of the jury must be for the plaintiff.

[Reehling *v.* Byers.]

The defendants presented the following points, to which are appended the answers of the court:

1. That if the jury believe, from the evidence, that W. H. Taylor sold and conveyed the premises in dispute in this suit, for the purpose of hindering, delaying and defeating Joel Brinton in the recovery of his debt, and that Isaac Taylor knew of such purpose, then the deed of William H. Taylor to Isaac Taylor is fraudulent and void as against Joel Brinton, and those claiming under him, and their verdict must be for the defendants.

Ans. "The principle of law is correctly stated. For its application to this case the jury is referred to the general charge, and to our answer to defendants' second point."

2. If the jury believe, from the evidence, that W. H. Taylor sold and conveyed the premises in dispute in this suit to Isaac Taylor, his father, for the purpose of hindering, delaying or defeating Joel Brinton in the recovery of his debt, and that Isaac Taylor had any manner of knowledge or notice of such purpose and intent of his son, W. H. Taylor, then the deed of W. H. Taylor to Isaac Taylor is fraudulent and void as to Joel Brinton, even though Isaac Taylor had actually paid a full price for the property, and these defendants claiming through Joel Brinton are entitled to their verdict.

Ans. "In the purchase of property from an insolvent debtor, a volunteer stands upon a different footing from a creditor. A volunteer who purchases with notice that the sale is made to hinder, delay or defraud the creditors of the vendor, is a participator in the fraud, and the conveyance is void under the statute of 13 Eliz. But a creditor has a right to secure his debt although he knows that some other creditors must lose in consequence, and that the object and purpose of the debtor is to secure and prefer him. Such knowledge would not render the conveyance void under the statute. But it is for the jury to say whether Isaac Taylor was a bona fide creditor of his son W. H. Taylor to the extent of the note he held, and whether the balance of the purchase-money was honestly paid."

In the general charge, the court, Wickes, A. L. J., inter alia, said: "It will not do that you believe one of the parties, W. H. Taylor, guilty of the fraud, unless you further believe the father, Isaac Taylor, was also a participator in it. It is the corrupt combination between the two which renders the conveyance void as to W. H. Taylor's creditors.

"Fraud, as I have said, is alleged, and it must be proved. It is familiar law, that it cannot be presumed—the burden of proving it is upon the party who asserts its existence—and this alleged fraud must be established either by direct proof, or by facts which warrant a presumption of its existence, clearly and conclusively proved: Battles *v.* Laudenslager, 3 Norris 446. In other words, in the case

[Reehling *v.* Byers.]

you are now trying, [you must find in the evidence direct proof of the fraudulent purpose of W. H. Taylor and his father to hinder, delay or defraud Joel Brinton, a creditor; or you must find such facts clearly and conclusively proven, as will justify you in presuming the existence of fraud on the part of the grantee and grantor in the deed of June 23d 1876.] * * * In transactions of this character, the courts have placed creditors and volunteers upon different footings. A volunteer who buys with notice of the intended fraud cannot hold the property against the creditor whose debt has been delayed or hindered, even although he may have paid its full value. But when a creditor takes the property to secure his debt, the transaction is not void, although he may have full notice that the debtor prefers him to his other creditors, and that other creditors must lose in consequence of such preference. [Indeed, where the property conveyed is not worth more than the existing indebtedness, it would be difficult to conceive a case in which fraud under the statute of 13 Eliz. could be established. But when, as in the case before us, a note is held by the vendee and applied only in part payment for the property, and cash is paid for what is due in excess of the note, and the jury is of opinion that the cash payment is not bona fide, but made only to deceive and cover up a fraud upon the creditors of the vendor, what is the effect? I instruct you that it would render the whole transaction void, because fraud vitiates everything it touches, and although you may be of opinion that the note was honestly held, yet, if you shall further believe from the evidence that the money was not honestly paid, then the purchase would be fraudulent and void against the creditors of W. H. Taylor."]

Verdict for defendants. A motion for a new trial was refused and judgment entered on the verdict. The plaintiff took this writ, and, inter alia, assigned for error the admission of the evidence in regard to the declarations of W. H. Taylor, the answers to the above points, and the portions of the foregoing charge included in brackets.

*Edward W. Spangler* and *Cochran & Hay*, for plaintiff in error.—The defendants failed to comply with their promises to supplement their offer with evidence of collusion between W. H. Taylor and Isaac Taylor. Even if it was the purpose and design of W. H. Taylor to convey his property to Isaac Taylor in order that Joel Brinton would not be able to collect the bail debt, it would not avoid the conveyance unless such purpose and design was communicated to Isaac Taylor, and not even then unless it was shown that Isaac Taylor was a volunteer, and that he did not take the property for the purpose of saving his claim.

We also contend that Isaac Taylor had an undoubted right to take this land for the purpose of saving his note against the grantor, though it had been shown that he knew that its tendency and effect

[Reehling v. Byers.]

would be to postpone Joel Brinton, or to prevent him from obtaining payment at all; and the fact that Isaac Taylor's note against W. H. Taylor did not amount to the whole of the purchase-money, did not constitute him a volunteer: Uhler v. Maulfair, 11 Harris 481; Craver v. Miller, 15 P. F. Smith 456; Bear's Estate, 10 Id. 430.

It is also respectfully submitted that the court below erred in its instructions to the jury as to the "circumstances" admitted in evidence, from which they might infer the father's active participation in his son's fraudulent designs. The jury should not have been left free to guess at fraud "where a proper motive existed, which might have been as readily the operating motive as one that was fraudulent." Isaac Taylor "had a motive entirely adequate, the preservation of his own debt against William Taylor:" Bear's Estate, supra.

The relationship of the parties does not change the principle of law that fraud is not to be presumed, and that in their business relations their conduct is not to be scrutinized with greater severity than that of strangers in blood: Patterson v. Stewart, 6 W. & S. 72; Brown's Appeal, 5 Norris 524.

William C. Chapman, for defendant in error.—The evidence was amply sufficient to justify an inference of fraud. In the case of Forsyth v. Matthews, 2 Harris 100, a case affirmed by this court, Judge LOWRIE says, "An assignment of all of a man's property when he is largely in debt naturally excites suspicion of fraud, and it is, therefore, evidence of fraud. If there be a judgment just ripening for execution at the time of the assignment, this increases the suspicion and adds weight to the evidence. That the transaction is between a father and son makes the transaction still more suspicious, because the father is supposed to be better acquainted than other people with the embarrassed circumstances of his son." In this case the relation of father and son, and the intimate daily intercourse of the parties, is certainly a reasonable ground for the inference that Isaac knew of William's embarrassed circumstances, and all about Joel Brinton's suit against him. Add to this the extraordinary coincidence of the purchase just three days before Brinton's lien was obtained, and that the purchase was by a man.on the verge of insolvency, of an expensive property he had no use for, and that the possession remained in William after the sale as before, without any change. It is to be remarked, also, that Isaac borrowed the money from Mrs. Meredith to pay William, and that it was immediately transferred back to Mrs. Meredith. Certainly all these circumstances tend to show fraud. It is a stronger case of collusion and fraud between father and son than Ferris v. Irons, 2 Norris 179. And this court there reverse, for the exclusion of evidence in the court below, less forcible and convincing than the facts and circumstances of this case.

13 NORRIS—21

Mr. Justice GORDON delivered the opinion of the court, May 17th 1880.

"A volunteer," says the learned judge of the court below, "who buys with notice of the intended fraud, cannot hold the property against the creditor whose debt has been delayed or hindered, even although he may have paid its full value. But when a creditor takes the property to secure his debt, the transaction is not void, although he may have full notice that the debtor prefers him to his other creditors, and that other creditors must lose in consequence of such preference. Indeed, where property conveyed is not worth more than the existing indebtedness, it would be difficult to conceive a case in which fraud, under the statute of 13 Eliz. could be established. But when, as in the case before us, a note is held by the vendee and applied only in part payment for the property, and cash is paid for what is due in excess of the note, and the jury is of opinion that the cash payment is not bona fide, but made only to deceive and cover up a fraud upon the creditors of the vendor, what is the effect? I instruct you that it would render the whole transaction void, because fraud vitiates everything it touches, and although you may be of opinion that the note was honestly held, yet if you shall further believe from the evidence that the money was not honestly paid, then the purchase would be fraudulent and void against the creditors of W. H. Taylor." With the above, as a general statement of the law governing cases of fraud arising under the statute of 13 Eliz., no fault can be found; the difficulty arises in its application to the case in hand. It does not seem to be questioned but that Isaac Taylor was a bona fide creditor of his son, W. H. Taylor, and, as such, the learned court concedes, his son might have preferred him over other creditors, even though he had full notice of such preference. It follows, if Isaac Taylor's motive in the purchase of the property in controversy was the security of his own debt, his purchase cannot be impeached, though he may have paid the difference between the amount of the note due him and the price agreed upon for the property in money. In this we must look to the motive of the creditor, and if that was honest and lawful, the intent of his debtor does not enter into the question. As was said by Mr. Justice COULTER, in Scott *v.* Heilager, 2 Harris 238: "One man cannot be prejudiced by the fraud of another, of which he has no notice nor opportunity of receiving notice." It is true, indeed, if the intention of the parties was not only to secure the note due to the father, but also to put the balance of the property into such a shape that it could not be reached by the son's creditors, then, as to such creditors, the whole transaction would be void. But of such intention we can find no evidence. The defendants offered to prove, and did prove, that William H. Taylor said, "I wouldn't have sold it," that is, the property in controversy, "only to get out

[Reehling *v.* Byers.]

of paying the bail-money to Brinton." This was all very well, in order to show the motive by which William H. was actuated in the transfer of his property, but it does not affect Isaac unless he knew of this fraudulent design at the time of the consummation of the sale. So well did the counsel for the defendants know that this evidence, standing alone, would come to nothing, that the offer under which it was admitted, was supplemented by a proposition to prove a fraudulent collusion between William H. Taylor and his father. . No effort, however, was made to fulfil this proposition; hence, the proof adduced was but an isolated link in a proposed chain of evidence which was never completed, and, therefore, utterly worthless, and so the court should have treated it: Battles *v.* Laudenslager, 3 Norris 446. Not only was there no evidence that this alleged fraudulent intention of William H. Taylor had been communicated to his father, either before or after the sale, but it was not even shown that the father knew that his son had been sued on the Brinton note, in which he was surety for A. B. Kurtz. Indeed, for aught that appears, he was wholly ignorant of the claim which, it is now said, he colluded with his son to avoid. But, as we have already intimated, had he known the fact of his son's suretyship for Kurtz, and that Brinton was about to obtain judgment, that would not have rendered his purchase void if in making it his intent was to secure his own debt, and not to hinder, delay or defraud Brinton. So, that Isaac Taylor borrowed part of the money, to pay out the balance of the purchase-money, from his daughter, Mrs. Meredith, was of no kind of significance. What if this money were that which she had just received from her brother, and was part of that which he had that day received from his father ? Her claim was an honest one; no one doubts that fact; one on which she had a right to receive the money paid to her, and there surely was nothing wrong in her loaning it to her father. It is a mere trifling with the principles of justice to allow a circumstance such as this, in itself so fair and proper, to be used to stamp a transaction, otherwise honest and lawful, with the character of fraud. Business dealings between parents and children, and other near relatives, are not *per se* fraudulent. They must be treated just as are the transactions between ordinary debtors and creditors. As in the latter case, where the bona fides of such transactions are attacked, the fraud alleged must be clearly and distinctly proved, so likewise in the former.

We have but to say in conclusion, that as there was, in this case, not even a sinctilla of evidence tending to involve the assignor of the plaintiff in the alleged fraud, the court should have affirmed the plaintiff's first point, that is, "that, under all the evidence given in this case, the verdict should be for the plaintiff."

The judgment is reversed, and a new venire ordered.