# JOHN KICHLINE v. WILLIAM S. LOBACH.

ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON
COUNTY.

Argued March 11, 1889—Decided April 8, 1889.
[To be reported.]

(*a*) In an action against a constable for a wrongful levy upon and sale of a wagon, claimed to be the property of the plaintiff and not that of the execution debtor, it appeared that the wagon, in the custody of a bailee, had, prior to the levy, been first sold by the execution debtor, and again sold by his vendee to the plaintiff, the bailee being notified of the sales, and that the levy had then been made upon it in the hands of the bailee.

(*b*) On the trial the constable, defendant, offered to prove by the first vendee, that at the time he bought he knew that the owner was being pressed by creditors; that the witness induced the plaintiff to buy the wagon; that the plaintiff knew the money which he paid therefor would go to the original owner, and that there was a conspiracy between the debtor, his vendee and the plaintiff to defraud the execution plaintiff.

1. In such case, the question was as to the existence of actual fraud, and, as the plaintiff was alleged to be a party to a conspiracy, and as the witness was a party to both of the sales and knew the facts, it was competent to examine him with particularity as to the several transactions, and the evidence should have been admitted.

Before PAXSON, C. J., CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 53 July Term 1889, Sup. Ct.; court below No. 19 December Term 1886, C. P.

On November 5, 1886, John Kichline took an appeal from a judgment obtained against him before a justice of the peace by Wm. S. Lobach, in an action of trespass which Lobach had brought against him, as constable, for selling a certain wagon as the property of one John Mertz, which wagon Lobach claimed to own.

The wagon originally belonged to Mertz and was in the custody of one Jacob Hoffman as bailee. On August 30, 1886, Mertz sold it to William Fenner, who gave Mertz a note for

$100 in payment. The next morning Hoffman was notified of the sale. On the evening of the latter day Fenner sold the wagon to Lobach for $100 and on receipt of the price Fenner paid his note to Mertz. Hoffman was also notified of this sale.

On September 10, 1886, Kichline, as constable, levied on the wagon under an execution in his hands in favor of one George D. Meyers against Mertz; he took it from Hoffman and on October 8th, following, sold it at public sale. Lobach then brought suit before the justice.

At the trial on March 29, 1888, Fenner being on the stand, Kichline, the defendant, made the following offer:

"Defendant proposes to show further that Mr. Mertz was pursued by his creditors, especially by Mr. Meyers; that he had been sued by summons; that he had been arrested on a charge of obtaining goods under false pretence; that Mr. Fenner knew all this; and, further, to prove what has already to some extent been proved, that Mr. Fenner or Mr. Mertz afterwards went to Mr. Lobach and induced him to advance the money upon this carriage and pay Mr. Fenner; that he took up or surrendered the note to Mr. Fenner that had been given, after being paid the amount of the note, and that Mr. Lobach knew the same fact, and that there was a conspiracy between these three parties, Mertz, Fenner and Lobach, to deprive the plaintiff of this carriage. Furthermore the defendant offers to prove that Mr. Meyers had an arrangement with Mr. Mertz to take this carriage for his debt; that Mr. Mertz had promised it to him, and afterwards pretended to have sold it to Mr. Fenner."

Objected to.

By the court: The plaintiff's right to recover in this action depends entirely upon whether the sale from Fenner to Lobach the plaintiff, was made in good faith, no matter whether the sale from Mertz to Fenner was in good faith or bad faith. If the sale from Fenner to Lobach was made in good faith, then the plaintiff is entitled to recover in this action, providing there were the legal requirements in regard to the sale and delivery, so as to constitute a complete sale. The fact whether the sale was made in good faith or not, is a fact that must stand by itself. The question as to whether the person originally owning the carriage was pursued by his creditors or not,

is a question that has nothing to do with the question of the good faith of the sale. A sale can be made by a man under such circumstances and be a perfectly valid sale. Therefore the validity of the sale must be determined by the circumstances connected with the sale itself and not by the prior condition of the owner's finances before the sale. The objection is sustained and bill sealed for the defendant.[2]

The charge of the court, REEDER, J., was in part as follows:

The allegation of the defendant is, that John Mertz, for the purpose of defrauding his creditors, made sale of this property in the way he did. You will have to determine whether that is true or not; whether he made the sale for the purpose of defrauding his creditors. But even though you may determine that he made this sale for the purpose of defrauding his creditors, that would not be enough to prevent William Fenner from acquiring a good title, if he made the purchase in good faith. In order to constitute actual fraud, so far as William Fenner's purchase is concerned, John Mertz must not only have intended to make this sale of this buggy for the purpose of defrauding his creditors, but Wm. Fenner must also have been a party to the fraud, knowing that the sale was made for that purpose, or knowing that it was a fraud.

If this was a good purchase by William Fenner; if it were made in good faith, for a valuable consideration, then it would be a good sale, even though William Fenner knew that John Mertz's creditors were pushing him and were likely to seize upon the buggy; that is to say, a man can purchase property of a man who is insolvent, and if he makes the purchase in good faith, and in good faith pays the consideration of that purchase, then it is a good sale, and the title to the property passes. Therefore the first step in your deliberation in determining your verdict will be, was there an adequate consideration passing from William Fenner to John Mertz for this buggy, and was the sale made in good faith?

William Fenner testifies that he gave his note, for the purchase of this buggy, for a hundred dollars, payable in one year. If that is true, and he gave it absolutely, intending to meet that note when it became due, then the buggy became his. That was an adequate consideration, and he had a right to do

what he pleased with it. If, however, he gave the note simply for the purpose of giving color to the sale, for the purpose of giving the appearance of a consideration to the sale, and, in consequence of any arrangement between him and John Mertz that that note should not be paid, then it was not a good consideration, and was not a good sale. and would not pass the title to this buggy as against creditors and third parties. It would, however, pass the title to the buggy as between themselves. John Mertz could never call in question Wm. Fenner's title to the buggy.

But John Mertz could call William Fenner's title to that buggy into question, provided he retained possession of it at the time the question was raised. This brings us to the consideration of the next question in this case. No matter whether William Fenner's title to this buggy was colorable, or whether it was purchased for a proper consideration, if, while he held the possession of the buggy—while he held the title to the buggy as against John Mertz, he parted with the buggy in good faith to anybody else, and the actual consideration was paid to him by anybody else, then that was a good title in the party that purchased of William Fenner. So, in the first place, you will have to determine whether Wm. Fenner actually paid the consideration in good faith, which he says he paid, or, whether it was an arrangement between himself and John Mertz to give Fenner a colorable title to the property. If William Fenner's purchase was good that would end this case, providing the sale by him to William Lobach was good; and I say to you, that, so far as that question is concerned, William Lobach's title is good as against all the world if William Fenner's title was good. If William Fenner's title was good, and the sale by him to William Lobach was a colorable one, the sale, as between them, was good and as between William Lobach and all the world, except the creditors of William Fenner and the purchasers of William Fenner for value.

In the consideration of this case, if you determine that the first sale, by John Mertz to William Fenner, was a valid sale, for a good consideration, that ends your consideration of the case, and your verdict will be for the plaintiff.

If you believe, however, that it was not a sale made in good faith, for a valuable consideration, but that it was a collusive

sale, a colorable sale, then you will proceed, before you can determine upon your verdict in favor of the defendant, to consider another question, and that is, whether the purchase made by William Lobach, the plaintiff in this case, was made for a proper consideration from William Fenner. Even though William Fenner's purchase from John Mertz may have been a collusive and colorable one, and may not have been made in good faith, yet, if William Lobach purchased of William Fenner in good faith, then William Lobach was entitled to the buggy, and is entitled to your verdict in this action. I do not propose to refer to the testimony at all, upon that subject. You have heard it all. William Lobach states very clearly, very positively, that he paid the actual cash and that he never had any arrangement with either William Fenner or John Mertz to return to him any portion of that money. Is that true? If you believe that testimony then William Lobach is entitled to your verdict. If you do not believe his testimony and you believe that his conduct was suspicious, or you disbelieve his testimony, and believe in spite of it, that the sale was not made in good faith, and you also believe that the sale to William Fenner was not made in good faith, then the defendant would be entitled to your verdict.

If, after considering and determining the facts to which I have called your attention, you should come to the conclusion that the defendant is entitled to your verdict, you will find a general verdict for the defendant. If you find, however, that the plaintiff is entitled to your verdict, then you will proceed to the determination of the amount to which the plaintiff is entitled. . . . .

The verdict of the jury was in favor of the plaintiff for $153.07. A motion for a new trial having been refused, judgment was entered, when the defendant took this writ, assigning for error, inter alia:

2. The rejection of defendant's offer.[2]

*Mr. Robert L. Cope*, for the plaintiff in error:

The theory of the defendant was that there was a conspiracy between Mertz and Lobach to deprive Meyers of his wagon which Mertz had agreed to sell to him in payment of his debt;

that Mertz had developed this plot to Fenner at the time he made the sham sale to him, and that Mertz afterwards revealed the scheme to Lobach. We should have been allowed to examine Fenner freely and fully as to his knowledge of the whole transaction, in order to prove the fraud : Heath v. Slocum, 115 Pa. 549; Deakers v. Temple, 41 Pa. 234; Rogers v. Hall, 4 W. 361; Bredin v. Bredin, 3 Pa. 89; Gibbs v. Neely, 7 W. 307; Lowe v. Dalrymple, 117 Pa. 569.

*Mr. W. E. Doster*, for the defendant in error :

1. Defendant's offer was in substance to prove by Fenner what Mertz, from whom he bought the wagon, had told him, when he bought, about being arrested by and indebted to Meyers for a tailor bill ; also to prove that "Fenner or Mertz afterwards went to Lobach and induced him to advance the money upon this carriage and pay Fenner ; that he took up or surrendered the note to Mr. Fenner, that had been given, after being paid the amount of the note, and that Mr. Lobach knew the same fact."

2. That Mertz went to Lobach we proved ourselves, and there was no occasion to prove it again. How the money was paid by Lobach to Fenner and by Fenner to Mertz was fully examined into by the cross-examination of Fenner ; also when the note was surrendered, how, and to whom. So far then, the offer was to cross-examine the witness again, and have him say the opposite of what he had sworn to on the cross-examination by the same counsel, which of course could not be done. The offer then proposed to show a " conspiracy between Mertz, Fenner and Lobach." No evidence to prove any conspiring was offered, and of course in that shape there could be no admission of testimony. The offer concludes with an offer to show that Mertz and Meyers had an arrangement for Meyers to take his carriage on the debt. This of course had nothing whatever to do with the good faith or title of Lobach, and was rejected. There was not a particle of relevant testimony. It was all offer and no proof.

OPINION, MR. JUSTICE CLARK :

This is an action of trespass, brought by William S. Lobach against John Kichline, a constable, for seizing and selling, on

an execution against one John Mertz, a certain carriage, or piano-box wagon, claimed to be the property of the plaintiff. The carriage, it is admitted, originally belonged to Mertz, but the plaintiff's contention is, that Mertz sold it to William H. Fenner, who afterwards and some time prior to the levy sold it to William S. Lobach. The carriage from the first, and until the constable's seizure, was in the custody of Jacob Hoffman, who had it in his warehouse in Bethlehem on storage, as a bailee. Fenner bought the carriage on August 30, 1886, giving his note to Mertz for $100, the price agreed upon; and on the next morning, Hoffman would appear to have been notified of the sale, and that the carriage belonged to Fenner. On the evening of the same day, August 31st, Fenner sold the carriage to Lobach for $100, the same price he had agreed to pay for it, and on receipt of the money, or within a day or two afterwards, lifted his note from Mertz. After Fenner sold to Lobach, Fenner says he notified Hoffman of the fact, and told him if Lobach came, to give him the carriage, as it now belonged to him.

Kichline, the constable, made his levy on September 10, 1886, upon an execution in his hands in favor of George D. Meyers against John Mertz; he removed the carriage from Hoffman's warerooms to the Washington Hotel, where on October 8th following he sold it at public sale to Theo. F. Lawall, for $75.

The whole question turned upon the bona fides of the sale from Mertz to Fenner, and upon the bona fides of William S. Lobach. Did he purchase the carriage in good faith, and upon a valuable consideration? Hoffman's engagement to hold the possession for the purchaser, it is conceded, would fill the requirements of the law, in respect of delivery, and no question of legal fraud is raised upon the record. The only question is as to the existence of actual fraud. Was the sale by Mertz to Fenner fair or fraudulent? If fraudulent, was Lobach party to it, or cognizant of it, at the time of his purchase? If the sale by Mertz to Fenner was not made with intent to hinder, delay, or defraud creditors, but was a bona fide and a fair sale, for a valuable consideration, then certainly Lobach is entitled to recover in this case, for his title was derived from Fenner; and, although Mertz was indebted, Fenner would not be affected by a fraudulent intent on the part of Mertz, of which he had no notice: Reehling v. Byers, 94 Pa. 316; Scott v. Hei-

lager, 14 Pa. 238. So, also, if the sale by Mertz to Fenner was in fact fraudulent, the intention being to hinder, delay, and defraud the creditors of Mertz, yet if Lobach was innocent, and ignorant of the fraud, he would be entitled to recover; for, as a purchaser without notice, his title would be protected, unless there were circumstances which should have put him as a reasonably prudent man upon inquiry, in which case, he would be charged with the knowledge of such facts as inquiry would have disclosed.

Applying these principles to the case now under consideration, it is plain that the first subject of inquiry was as to the nature of the transaction between Mertz and Fenner, and we cannot see why the offer embraced in the second assignment of error should not have been admitted.

The pivotal and most important question involved in the case was the good or bad faith of Lobach; and whilst Lobach cannot be held for the fraudulent character of the transaction between Mertz and Fenner, if he knew nothing of it, or was not put upon inquiry concerning it, yet it was proposed to show, not only that Mertz was pursued by his creditors, especially by Meyers; that he had been arrested for fraud, etc., but that Fenner or Mertz went to Lobach and induced him to advance the money on this carriage, and to pay Fenner the amount of his note; that the note was paid and surrendered to Fenner; that Lobach was cognizant of these facts, and generally that there was a conspiracy between the three persons named to defraud Meyers. The offer was in some respects inaccurate and somewhat general in terms, but as it was not objected to on that ground, and the court seems to have understood its import, we think it should have been received. "The plaintiff's right to recover in this action," says the learned judge, "depends entirely upon whether the sale from Fenner to Lobach, the plaintiff, was made in good faith, no matter whether the sale from Mertz to Fenner was in good faith or bad faith." The first part of this statement of the law, if properly understood, is undoubtedly correct; for if the sale from Mertz to Fenner was fraudulent, and Lobach knew it, then the sale from Fenner to Lobach could not have been made in good faith; this made Lobach party to the fraud.

But the expression that it was "no matter whether the sale

from Mertz to Fenner was in good faith or bad faith" is accurate only upon the assumption that Lobach was ignorant of the fraud if any existed. That the court so understood the law is manifest from the fact that the good faith character of the sale to Fenner was expressly submitted to the jury. The error of the court consists in not admitting the evidence properly bearing on that question. The witness on the stand was a party to both of the sales, and it was certainly competent to examine him, with some degree of particularity, as to the exact character of the several transactions. The evidence offered was with reference to the sale from Mertz to Fenner, and to Lobach's connection with or knowledge of that sale, or of any circumstances connected therewith; and as this was certainly pertinent to the issue, we think it should have been received. In cases of fraud, considerable latitude has always been allowed. We have purposely avoided any reference to the facts, bearing upon the alleged fraud, by way of illustrating the pertinency of the evidence proposed, fearing that what we would say might tend to influence the jury in their consideration of the case, when it comes on for re-trial.

The judgment is reversed, and a venire facias de novo awarded.