# American Trust Co. *v*. Kaufman, Appellant.

*Equity—Equity practice—Jurisdiction—Fraudulent conveyance
—Husband and wife—Evidence—Death of fraudulent grantor—
Lack of consideration—Presumption—Acts of April 6, 1859, P. L.
387; May 21, 1921, P. L. 1045—Constitutional law—Due process of
law.*

1. Where the plaintiff claims to have an interest in or lien upon land located in this State, but the defendant who contests his claim is a nonresident, suit may be brought in the county where the land is located, and the defendant may be served in the manner prescribed by the Act of April 6, 1859, P. L. 387, without infringing upon article IV, section 2, of the Constitution of the United States or the 14th Amendment thereto.

2. Where an alleged fraudulent grantor has died, the persons whom it is intended to defraud may maintain a bill in equity to set aside the conveyance, have their claim decreed to be a lien on the land, and have it sold to pay them the amount found to be due.

3. Not decided whether section 9 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 1047, can constitutionally give jurisdiction in all cases of fraudulent conveyances.

4. Where a fraudulent grantor has died, it is not necessary to sue his personal representatives, and issue a scire facias against his surviving spouse, heirs and the devisees, alienee or owner of the land; the property thus sold is not "real estate of such decedent."

5. Where an adequate consideration has been paid for a conveyance of land, it cannot be set aside without proof of collusive fraud to which the grantee was a party.

6. Where, however, the effect of a conveyance is to hinder, delay or defraud creditors, and there was no consideration for it, or that paid was nominal or otherwise grossly inadequate, the conveyance is presumptively fraudulent. A grantee who attempts to hold land acquired under such circumstances, thereby makes himself a party to the fraudulent intention of the grantor, though without knowledge of the fraud at the time the conveyance was made.

7. Under such circumstances, if the grantee is the wife of the grantor, she must prove she was a creditor, by evidence which is clear and satisfactory, beyond that required of other creditors, and leave no doubt of its good faith, and its truth in fact.

*Appeals—Harmless error.*

8. Harmless error furnishes no cause for a reversal.

*Evidence—Depositions—Parties—Former litigation—Record — Practice, C. P.*

9. Depositions taken in a former litigation are not admissible, if the parties are not the same as in the suit in which they are offered. The fact that they were certified and filed in the previous suit, so as to become part of the record for the purpose of review in that case, does not alter this conclusion, even when the record of that suit is offered in evidence in the later proceeding.

Argued October 6, 1926. ˙Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 123, March T., 1926, by defendant, from decree of C. P. Allegheny Co., April T., 1923, No. 1526, on bill in equity, in case of American Trust Co. v. Sidonia S. Kaufman. Affirmed.

Bill to cancel fraudulent conveyance and fix lien on real estate. Before REID, J.

The opinion of the Supreme Court states the facts.

Decree for plaintiff. Defendant appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Wm. Kaufman,* with him *Thos. F. Garrahan,* for appellant.—The court had no jurisdiction: North Penna. Coal Co. v. Snowden, 42 Pa. 488; Kemmler v. McGovern, 238 Pa. 460; Am. Trust Co. v. Kaufman, 276 Pa. 35; Wallace v. Electric Co., 211 Pa. 473; Bird v. Sleppy, 265 Pa. 295.

There is not a scintilla of evidence of fraud against appellant, the grantee.

It is well settled both in Pennsylvania and in New York that when a husband is indebted to his wife, he may rightfully prefer her to his other creditors by either transferring property to her, or by confessing judgment in her favor, or otherwise: Benson & West v. Maxwell,

105 Pa. 274; Reehling v. Byers, 94 Pa. 316; Clark v. Douglas, 62 Pa. 408; Meckley's App., 102 Pa. 536; Lahr's App., 90 Pa. 507; Hawley v. Griffith, 187 Pa. 306; McPherran's Est., 212 Pa. 432.

Thereby the court below has attempted to impose personal obligations on appellant, and has ordered her property seized and sold to pay an obligation which she never owed. It is pure confiscation, and it is a deprivation of her property without due process of law, and is forbidden by the laws and Constitution of Pennsylvania, as well as by the laws and Constitution of the United States, particularly the 14th Amendment: Fry's Est., 270 Pa. 24; Sauders v. Racquet Club, 170 Pa. 265; Winch's App., 61 Pa. 424; Taylor's App., 93 Pa. 21; Hyde v. Baker, 212 Pa. 224; Kemmler v. McGovern, 238 Pa. 460.

*Owen S. Cecil,* with him *William J. Barton,* for appellee.—Equity has jurisdiction and the bill was properly served: Fowler's App., 87 Pa. 449; Houseman v. Grossman, 177 Pa. 453; Chisholm v. Moore, 49 Pa. Superior Ct. 132; Handel v. Elleford, 258 Pa. 143; Phila. v. Kelly, 82 Pa. Superior Ct. 112.

As the wife's title was acquired for a nominal consideration, the conveyance was voluntary and presumptively fraudulent against creditors of the husband: Dalley's Est., 200 Pa. 140; Am. Trust Co. v. Kaufman, 276 Pa. 35; Smith's Est., 22 Lanc. L. R. 137; Chisholm v. Moore, 49 Pa. Superior Ct. 132.

No federal question is involved: Roller v. Holly, 176 U. S. 398; Arndt v. Griggs, 134 U. S. 316.

OPINION BY MR. JUSTICE SIMPSON, November 22, 1926:

While heavily indebted to the American Trust Company (plaintiff below and appellee here) Gustave Kaufman, through an intermediary, conveyed to his wife (defendant and appellant) $30,000 worth of real estate, located in Allegheny County, Pennsylvania, for the expressed consideration of "$1.00 and other good and

valuable considerations." Kaufman lived in New York; plaintiff sued him there and recovered a judgment for a portion of the indebtedness, and thereupon issued, in Allegheny County, a writ of foreign attachment against that property. We sustained the attachment (American Trust Co. v. Kaufman, 276 Pa. 35), but it was later dissolved because of his death. Plaintiff then filed the present bill in equity, averring that the conveyance to defendant was without consideration, and was made for the purpose of defrauding plaintiff, and prayed that the deed be cancelled, that defendant be restrained from disposing of or encumbering the property, that plaintiff's claim be declared a lien on it, and that a trustee be appointed to sell it, and apply the proceeds to payment of the debt. During all this time defendant also resided in New York, and could not be personally served with process, but, the real estate being here, the court below authorized service of the bill to be made on her, in the manner prescribed by the Act of April 6, 1859, P. L. 387; and it was so made.

Defendant appeared de bene esse, and challenged the right of the court below to authorize service upon her under the Act of 1859; and also denied its jurisdiction, as a court of equity, of the cause of action alleged in the bill. These objections being overruled, she appealed to this court, but the appeal was quashed, because the order objected to was interlocutory: American Trust Co. v. Kaufman, 279 Pa. 230. Defendant then filed her answer, and the case was tried and adjudicated in due course, resulting in a decree for plaintiff, from which the present appeal is taken.

The Act of 1859 was properly utilized for the purpose of serving defendant. The land being located within the jurisdiction of the court below, but defendant, who claimed to own it, being a nonresident, the statute says she may be served with process, in the way specified, in order that she may defend the action, if she sees fit so to

do. The bill did not seek to have her held individually liable to pay the amount due plaintiff, but only that the land should be decreed to be liable for it. The claim being thus limited, the service upon defendant could properly be made in the way it was done: Coleman's App., 75 Pa. 441; Arndt v. Griggs, 134 U. S. 316; Roller v. Holly, 176 U. S. 398. It is quite possible that when defendant filed her answer and contested the case on its merits, she waived the right to contest the authority of the court to hear and determine the cause: Byers v. Byers, 208 Pa. 23. We need not pursue this matter, however, since the decree did not hold her personally liable for the debt. True, she was made responsible for the costs which accrued in her defense in the court below; and this was right. One who conducts a losing cause de bene esse, is just as much liable for the costs thereby caused, as he would be if it was defended generally, and as he would be to the costs on an unsuccessful appeal prosecuted de bene esse.

If the husband was alive, much could be said in support of the contention that equity has no jurisdiction because plaintiff has an adequate remedy at law, by the recovery of a judgment against Kaufman, a sale of the property as his, and an action of ejectment against her. But it has long been held that the death of the alleged fraudulent grantor, opens the door to equity, under its general jurisdictional head in cases of fraud: Appeal of Fowler, 87 Pa. 449; Houseman v. Grossman, 177 Pa. 453; Handel v. Elleford, 258 Pa. 143. What has been said obviates the necessity of considering the effect of section 9 of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 1047, which expressly states that a creditor whom it was intended to defraud, may "have the conveyance set aside...... to the extent necessary to satisfy his claim," which, of course, could only be done by a proceeding in equity; or of our decision in Sauber v. Nouskajian et ux., 286 Pa. 449, 455, in regard to that statute. We should per-

haps add, however, in order to avoid future misinterpretation, that the Act of 1921 was not called to our attention when Brackin v. Welton Engineering Co., 283 Pa. 91, was before us, and was not considered by us; hence that decision does not militate against the constitutionality of the statute.

Equally unavailing is appellant's claim that plaintiff cannot succeed because it did not proceed under the Act of June 7, 1919, P. L. 412, 413, to sue Gustave Kaufman's personal reresentatives within a year after his death, and then or later bring his "surviving spouse and heirs and the devisee, alienee or owner of the land" on the record, after which, if judgment was duly obtained, the land could be sold at sheriff's sale. Perhaps it would be sufficient to say that that statute has no relation to cases where real estate has been fraudulently conveyed by a debtor, since it was not "real estate of such decedent" when he died, and his "surviving spouse" not being among those who were intended to be defrauded by the conveyance, has no standing to object to the action of the creditor who was. Beyond that, however, this suit was indexed as a lis pendens in the manner provided by the Act of June 15, 1871, P. L. 387; and so, also, within a year after Kaufman's death, a sci. fa. was issued, in a suit brought by plaintiff against him in his lifetime, warning his administrator to become a party defendant, or to show cause why he should not be so made. This sci. fa. was also duly entered in the judgment index, and operated to retain the lien of plaintiff's claim.

Nor is appellant any happier in her contention that plaintiff cannot recover because of article IV, section 2, of the Constitution of the United States, and the 14th amendment thereto. Her claim upon this point is that "the court below has attempted to impose personal obligations upon appellant, and has ordered her property seized and sold to pay an obligation she never owed......and it is a deprivation of her property with-

out due process of law." But, as we have already shown, no personal obligation has been imposed on defendant, except for the costs for which she was rightfully held liable; the service upon her was properly made; and, as between her and plaintiff, the property never was hers.

A few of the assignments of error relate to the evidence, and they may be considered in two groups. In the first it is alleged that a fatal defect appears, since there was no proof of fraud on the part of defendant personally. Where an adequate consideration has been paid for a conveyance, of course it cannot be set aside, in the absence of proof that the grantee was a party to the fraudulent attempt to hinder, delay or defraud creditors: Reehling v. Byers, 94 Pa. 316; Kichline v. Lobach, 125 Pa. 295, 301. But this is not so where there was no consideration, or that paid was grossly inadequate: Chisholm v. Moore, 49 Pa. Superior Ct. 132; American Trust Co. v. Kaufman, 276 Pa. 35. A grantee who attempts to hold land acquired under such circumstances, thereby makes himself a party to the fraudulent intention of the grantor, though he did not know of the fraud at the time of the conveyance to him. For a court of justice to hold as appellant contends, would give to fraud an easy entrance into a realm where justice itself could not be obtained.

The other objections regarding the evidence relate principally to the proofs touching Gustave Kaufman's indebtedness. Without going into them in detail, and showing that the evidence was properly admitted, it is sufficient to say that that indebtedness was clearly shown by the New York judgment, and is not disputed. Hence, even if the admission of the other evidence was error,—which we do not say it was,—it was harmless, and therefore furnishes no ground for reversal: Roberts v. Cauffiel, 283 Pa. 64. Equally harmless was the admission in evidence of a memorandum made by a witness, of certain figures given to him by Kaufman,

at the time of one of their conversations. Whether or not it was admissible under the rules regarding consonant evidence need not be considered, since, in any event, it was harmless.

Before taking up the numerous remaining assignments of error which relate to the findings and conclusions of the court below, it is necessary to consider whether or not a part of the evidence which was admitted by the trial judge, was properly stricken out by the court in its adjudication. It consisted of the testimony of three witnesses, taken on the hearing of the rule to quash the foreign attachment. The parties to that proceeding were plaintiff and Gustave Kaufman, who was then living. Defendant had no connection with it. To the present litigation she is a party and he is not; hence the testimony was inadmissible, unless something else appeared to show the ordinary rule did not apply. Appellant asserts this appears in the order made by the court below in the foreign attachment case, that "all the evidence taken......[in that proceeding] be duly certified and filed so as to become part of the record." Her contention is that thereby the testimony referred to became part of the record to the same extent as the pleadings themselves; and, hence, when that record was offered in evidence in the present case, those depositions could be used with the same effect as if they were taken in this case. At common law the testimony, though filed in the prothonotary's office, was not part of the record, and could not be used, even on appeal in the case in which the evidence was taken, unless forming part of a duly sealed bill of exceptions. When thus sealed and filed, that was the limit of their use. Our acts relating to stenographers, only provide a substitute for the bill of exceptions, and have not given to the evidence, when certified and filed, any additional dignity: Edwards v. Gimbel, 202 Pa. 30.

We have several times read all the evidence in the case except that properly excluded, as above set forth, and

find no reason for reversal. Starting with the principle that the deed to appellant was presumptively fraudulent as to plaintiff (American Trust Co. v. Kaufman, 276 Pa. 35) and that the burden was upon her to "prove her claim by evidence [which is] clear and satisfactory to a degree beyond that required of other creditors, and leaves no doubt of its good faith, and its truth in fact" (Dalley's Assigned Est., 200 Pa. 140; American Trust Co. v. Kaufman, supra, page 39), we find much that leaves doubt and uncertainty in the judicial mind. The deeds say the conveyances were made for "$1.00 and other good and valuable considerations"; the revenue stamps upon them imply a consideration of $8,000, though, as appellant says, the property was worth $30,000. She alleges her husband then owed her $32,503.85, but does not say she cancelled that indebtedness, or any part of it, in consideration of the conveyances. When giving the details of the items making up the totality of her claim, she says the memorandum she was using was made up from books that she had, but they were not produced or tendered. Though that indebtedness was accruing for a quarter of a century, the only obligation she held was for $2,000 of it, given December 15, 1919. She produced also a check for $500 which she said she gave to her husband for the loan of that amount, and a receipt for $6,000 of bonds, which does not specify that he received them from her, though she says he did. She repeatedly escapes giving testimony regarding the details of these transactions by saying she cannot remember. She says the first loan was of $12,000 in 1895. Three years thereafter her husband went into bankruptcy. He did not schedule her claim as a part of his indebtedness; and, though she must have known of the proceedings, she made no claim as a creditor. There was evidence that she inherited from her father the bonds of certain well-known existing industrial and railroad corporations, which she says she handed to her husband, in specie, and which he used

for his personal benefit, thereby becoming liable to her for their value, which formed, as she says, the greater part of the consideration for his conveyance to her of the property in dispute; yet she made no attempt to corroborate her story by the unassailable records of those corporations, although, as we have already shown, a heavy burden rested on her in the establishment of her claim.  At the time of the conveyance to her, the property in dispute was the only estate of her husband, and he died leaving no assets.  She never made demand for the amounts she now says he owed her, except for the $2,000 for which she holds a note; and did not ask him to secure the rest in any way.  She did not ask him to deed the property to her, and had no part in order-ing the drawing or recording of the conveyances.  This was all attended to by her husband, apparently without consulting her, her only part in the transaction appear-ing to be to join in the deed to the strawman, in the usual form necessary to bar her dower.  So far as ap-pears, the thought of conveying the property to defend-ant, did not enter her husband's mind until he became insolvent, and could obtain no more money from plain-tiff.  It may be that he was indebted to her in the amount claimed, in which event, as it was more than the value of the property, the conveyance would have been good, though it constituted the whole of his estate, provided it was received without collusive fraud.  It may be, also, that defendant's unbusinesslike methods were due to the fact her debtor was her husband.  Nev-ertheless, as we have already said, the opportunities for "fraudulent collusion between husband and wife is so easy of execution and so difficult of proof, that it is the well-settled rule that a wife claiming as a creditor against other creditors of the husband must prove her claim by evidence clear and satisfactory......[so as to] leave no doubt as to its good faith and its truth in fact": American Trust Co. v. Kaufman, 276 Pa. 35, 39. Our brief review of her testimony, as above, does not

remove all doubt and uncertainty, and hence we must hold that her defense has not been legally made out.

The decree of the court below is affirmed and the appeal is dismissed at the cost of appellant.