## Ronders v. Glen Alden Coal Company et al.

Before Aponick, Flannery, Lewis and Pinola, JJ.

*Thomas L. Kennedy, Jr.,* and *T. B. Noonan,* for claimant.

*J. H. Oliver, Franklin B. Gelder, William J. Davis, Gilbert S. McClintock,* for Glen Alden Coal Company.

*Andrew J. Zawoiski,* for Commonwealth.

PINOLA, J., March 1, 1954.—On April 2, 1951, Leona Ronders, widow of John Ronders, deceased, filed a petition for compensation under the Pennsylvania Occupational Disease Act, in which it is alleged that her husband died on May 21, 1950, as the primary result of anthraco-silicosis.

Answers denying the material allegations of the petition were filed by both defendants. After several hearings, Referee Olexy entered an award of compensation in claimant's favor. Defendants appealed to the Workmen's Compensation Board, and on Janu-

ary 21, 1953, the board affirmed the award. We have before us the appeals of both defendants.

During his lifetime decedent had been awarded compensation, so that the referee's award was, in effect, an order to pay the balance of the compensation due to decedent's widow: Toffalori v. Donatelli Granite Co., 157 Pa. Superior Ct. 311; Hvizda v. Jeddo Highland Coal Co., A-37573 (board, 1952).

Appellants insist that claimant widow has failed to prove by sufficient, substantial and competent evidence that she and decedent lived together in a common domicile and that she was dependent upon her spouse.

Section 307(8) of the Occupational Disease Act of June 21, 1939, P. L. 566, 77 PS §1407, provides, inter alia:

". . . No compensation shall be payable under this section to a widow, unless she was living with her deceased husband at the time of his death, or was then actually dependent upon him and receiving from him a substantial portion of her support."

The referee found (finding no. 13) that:

"The decedent and his widow resided together until January 20, 1949. Until that time, the decedent made some contribution to the support of his widow. He made no contribution to her support after that date."

His conclusion of law reads as follows:

"Since the decedent was living with the claimant widow until his date of admission to the hospital where he remained until his death, the claimant widow is not barred by the provisions of 307, subsec. 8, of the Occupational Disease Act."

We believe that the referee and the board were right in their respective actions.

Decedent was employed by defendant in its anthracite mines from the second half of June 1939 to the first half of June 1943, and from the first half of

November 1943 to May 15, 1944, with the exception of the first half of January. He also worked for defendant coal company from December 16, 1946, to June 14, 1947.

On June 16, 1947, he became totally disabled by anthraco-silicosis with a superimposed active pulmonary tuberculosis.

On August 19, 1947, he was admitted to the White Haven Sanatorium, where he remained until September 30th. He reëntered the sanatorium on October 15th and stayed until January 18, 1948. He was readmitted on January 20, 1949, and remained there as a patient until the date of his death, to wit, May 21, 1950.

Claimant contended that she and decedent lived together and that she was dependent upon him for support.

In a narrow and severely literal sense of the phrase, claimant was not "living with" the deceased at the time of his death. She lived with him until he entered the hospital, and but for the fact that he needed hospitalization she, no doubt, would have continued to live with him.

Although the referee finds that he did not contribute to her support after entering the hospital, there is testimony in the record that her husband gave her money occasionally when she went to the hospital to see him, and just a week before he died, the Tuesday before the Sunday on which he died, he gave her a check for $50.

The only evidence which would have permitted the board to infer that claimant did not live with the deceased is the record of a divorce action brought by the husband against the wife while he was in the hospital. The hearing was held at the hospital, and although the attorney for the widow accepted service of the master's notice of hearing, she testified positively that she at no time had any notice of the hearing. Before the proceedings could be completed, the husband died.

While it is true that neither the board nor referee is bound by the technical rules of evidence in conducting any hearing or investigation, "all findings of fact shall be based only upon sufficient, competent evidence to justify the same": Act of June 2, 1915, P. L. 736, sec. 422, as amended, 77 PS §834.

"Competent" in this respect means legally competent or "answering all requirements of the law": Vorbnoff v. Mesta Machine Co., et al., 286 Pa. 199; Seitzinger v. Fort Pitt Brewing Co., 294 Pa. 253.

In our opinion, the record of the divorce proceedings was improperly received in evidence for several reasons.

Under the Act of March 28, 1814, P. L. 248, 28 PS §1, now suspended by Pa. R. C. P. 4025, depositions taken were "allowed to be read in evidence in any subsequent cause wherein the same matter shall be in dispute between the same parties or persons." If taken against one defendant, they could not be read in a subsequent action in which another defendant is joined and the land involved is not the same: Walker v. Walker, 16 S. & R. 378, 379; and depositions taken in a former suit are not admissible where the parties are not the same, even though the depositions had been certified and filed as part of the record in the former suit which was offered in evidence in the later proceeding: American Trust Co. v. Kaufman, 287 Pa. 461, 468, 135 Atl. 210, 213.

The same restrictions are applicable under Pa. R. C. P. 4020. See 5 Anderson Pa. Civil Practice 765.

Obviously the parties in this proceeding are not the same as the parties in the divorce action, nor is the subject matter of the two actions the same, and therefore, the objection of claimant should have been sustained by the referee.

Furthermore, it would have to be excluded because she had no opportunity to cross-examine her husband. In any event, since the husband died before the action

was concluded, the record was clearly inadmissible. See Rupert v. Plattdeutsche Volksfest Verein, 263 N. Y. 338, 189 N. E. 240, where the court held it was error to dismiss the compensation claim of the deceased wife, where it appeared that she had instituted divorce proceedings, but it did not conclusively appear that they had been carried to a successful conclusion.

The consideration of the record by the referee and the board though erroneous, was harmless, because the board declared:

"Nor do we believe that the *undetermined* divorce action, instituted by the decedent, operates as a fatal bar to the claim of dependency. The indignities recited in the evidence of the collateral divorce action, while independent to our inquiry, do not establish that the decedent failed to acknowledge or discharge his obligation of support to the claimant within the contemplation of the law."

Of interest in connection with the merits of the claim is the decision in Creasy v. Phoenix Utilities Co., 276 Pa. 583. There the wife was considered "actually dependent" where her husband had left their home 18 months before his death to procure work in a distant city. He had promised to remit money to her but failed to do so, whereupon she instituted proceedings for support. The failure to secure judgment in those proceedings was due to his avoiding arrest. Justice Frazer said (p. 586):

"The criterion in cases of this character, consequently, must be whether or not a wife, living apart from her husband and dependent upon him, but not actually receiving support from him, has acquiesced in his action under circumstances amounting to a repudiation by him of his legal obligation to support his family."

In Northwestern Iron Co. v. Industrial Commission of Wisconsin, 154 Wis. 97, 142 N. W. 271, the Com-

pensation Act provided that in case of death, a wife living with her husband at the time of his death shall be conclusively presumed to be solely and wholly dependent for support upon him. The court declared:

"Proof of total dependency is dispensed with under the statute where the husband and wife are 'living together' at the time of the death of the injured employe. It seems, therefore, quite obvious that the Legislature intended by the use of the words to include all cases where there is no legal or actual severance of the marital relation, though there may be physical separation of the parties by time and distance. The 'living together' contemplated by the statute, we think, was intended to cover cases where no break in the marriage relation existed, and therefore physical dwelling together is not necessary, in order to bring the parties within the words 'living together'. . . . The question does not turn on time or distance, but upon the nature and character of the absence and the intention of the parties respecting it. . . . The status of the parties was established by their relation as husband and wife in their native country. That relation, having once existed, is presumed to continue. . . . The intent and purpose of the separation is explained, and the evidence shows that the marital relation continued without break."

In our statute the wife is entitled to compensation if she is "living with" her husband at the time of his death or is dependent upon him. She was living with him at the time he left for the hospital and that relation is presumed to continue. Obviously she could not live with him in a hospital.

Judge Reno made it clear in Sheaffer v. Penn Dairies, Inc., et al., 161 Pa. Superior Ct. 583, 585, that:

" 'Living with' does not always import physically dwelling together in the same house. Icenhour v. Free-

dom Oil Works Co., 136 Pa. Superior Ct. 318, 7 A. 2d 152; 145 Pa. Superior Ct. 168, 20 A. 2d 817; Dietrich et al. v. Hudson Coal Co., 117 Pa. Superior Ct. 193, 177 A. 606. Whether parties are 'living with' each other is a question of fact, but it is to be determined, not by consulting only one facet of the relationship, but by inspecting the whole picture. And where it is found that for the convenience of the parties, or for some other moving and reasonable motive they dwell in separate homes without estrangement or repudiation or release of their legal obligations, and with constant recognition of the marital tie, it is no strain upon logic or credulity to find that they were 'living with' each other. Cf. Creasy v. Phoenix Utilities Co., 276 Pa. 583, 120 A. 659. For in this class of cases, we look beyond the form to the substance, from outward appearances to the realities behind them."

Viewing the evidence in the light most favorable to claimant, as we are required to do, since the finding is in her favor, we conclude there is sufficient, substantial and competent evidence to support the finding that she was living with her husband at the time that he entered the hospital and during his stay there.

Accordingly, we enter the following

### Order

Now, March 1, 1954, at 9:30 a.m., the exceptions are overruled, the appeals are dismissed and judgment is directed to be entered in favor of claimant, Leona Ronders, against the Glen Alden Coal Company and the Commonwealth of Pennsylvania; the Glen Alden Coal Company and the Commonwealth of Pennsylvania are directed to pay compensation to claimant at the rate of $12 per week beginning May 21, 1950, and continuing within the limitations of the Occupational Disease Act. The total payments made to decedent and to the widow, and the children, shall not exceed the sum of $4,000 in the aggregate.

The weekly payments of compensation shall be prorated by defendants as follows: The Glen Alden Coal Company shall pay 80 percent of each installment and the Commonwealth of Pennsylvania shall pay 20 percent of each installment. Interest shall be payable on deferred installments of compensation from the due date thereof.