CHARLES S. COLLINS v. HARRISON W. JACKSON.

*Fraudulent representations—Seller's talk—Damages.*

1. Where the declaration in an action for damages alleges fraud as the basis of the action, the facts must be proved as set forth.

2. In an action brought by a purchaser for fraudulent representations by the vendor, proof that the consideration for the sale was paid for the goods and the good-will of the business, is fatally variant from a declaration which only states that it was for the goods.

3. One who bought the goods and good-will of a business, afterwards sued the vendor for fraudulent representations. *Held,* necessary to the ascertainment of damages that he aver in his declaration, and show in his proofs, what part of the consideration was paid for the good-will.

4. A vendor's honestly expressed but incorrect opinion as to the amount, quality and value of the goods he sells will not support an action for fraudulent representations, if the purchaser sees or knows the property, or has opportunities to know it. The purchaser cannot recover unless the vendor, with superior means of knowledge, intentionally gives a false opinion as to material facts, for the purpose of defrauding the purchaser, and the latter has reason to rely and does rely on it as true.

5. In an action for fraudulent representations by the vendor on the sale of goods, it is for the jury to determine whether the opinion expressed is false and known to be so to the vendor, and to what extent it is relied on by the purchaser without negligence.

6. In an action for damages resulting to the purchaser of a stock of goods from the fraudulent representations of the vendor, evidence that the

purchaser in settling his affairs had been compelled to dispose of his wife's house and lot, is inadmissible, if not counted on in the declaration, and if the fraud complained of was not the proximate cause of the loss of the house and lot.

Error to Marquette. (Grant, J.) June 3.—June 18.

CASE. Defendant brings error. Reversed.

*Ball & Hanscom* for appellant. Ordinary seller's talk, if honestly meant, will not support an action for fraudulent representation: 1 Sugd. Vendors 3; *Bishop v. Small* 63 Me. 12; *Davis v. Meeker* 5 Johns. 354; *People v. Jacobs* 35 Mich. 36; *Ellis v. Andrews* 56 N. Y. 83: 15 Am. Rep. 379; Cooley on Torts 483; 2 Kent's Com. 485; Kerr on Fraud 82; nor will the representations be actionable if the purchase is made with knowledge of their falsity: *St. John v. Hendrickson* 81 Ind. 350; *Doherty v. Bell* 55 Ind. 205; *Hunt v. Hardwick* 68 Ga. 100.

SHERWOOD, J. This suit is an action on the case brought by plaintiff to recover damages for the alleged fraudulent representations made by defendant on a sale made by him as agent or manager for his wife, of a stock of goods to plaintiff, at Marquette, in November, 1876.

It is claimed by plaintiff that the goods were not as represented to him by the defendant; that he was induced to buy the goods upon the defendant's representation that "the goods were mostly new, were fresh, well selected and salable, and had been purchased at the lowest market prices, and were worth the prices paid for them, and that upwards of $8000 worth had just been purchased and put into said stock," and that the old goods in the store had been mostly cleared out and taken to "the Calumet store;" that the goods were inventoried at the cost price, and that plaintiff paid 5 per cent. more than the inventoried price; that they amounted to the sum of $26,043.21.

The plaintiff avers that he relied upon these representations in making the purchase, all of which were untrue; that many of the goods were old and shelf-worn; that they were inventoried above retail prices for same, and that not more than $2000 worth of new goods had been placed in the stock; that

all were unsalable and not worth the prices paid for them, and that defendant knew the representations to be untrue at the time he made them; that the stock consisted of dry, millinery and fancy goods; and that he had suffered great loss from the acts and representations complained of. The cause was tried before a jury, and the plaintiff had judgment for $3140.

This case has once before been in this Court, (see 39 Mich. 557,) and the character and sufficiency of the declaration, and the rule of damages thereunder, was then passed upon. The case is now before us upon exceptions to the rulings of the court upon the trial, and to the charge and refusals to charge. The record contains all the testimony taken.

Many of the representations, as stated in the declaration and claimed to have been relied upon by plaintiff, are vague and very general; indeed, it is difficult to distinguish them from mere expressions of opinion upon the subjects to which they relate; but the declaration was not demurred to. And under the rule stated when the case was first before this Court, and to which we still adhere, " that when issue is joined on the facts the declaration cannot be held fatally defective, unless inconsistent with any reasonable ground of action," there was, upon all the facts stated and averred to be false, if sustained by the proofs, a sufficient case to be submitted to the jury.

The evidence shows that, at the time the plaintiff made the purchase in 1876, he was engaged in merchandising at Ontonagon, and had been in the dry goods business many years previous; that Mrs. Jackson, the owner of the stock sold, and wife of the defendant, was dealing in fancy and dress goods and carrying on the millinery business at Marquette, where she had been engaged in the business about three years, and in which she was assisted by the defendant. After some correspondence between the parties the plaintiff went to the store of Mrs. Jackson where the stock of goods was, and saw her and the defendant and made a contract for the purchase of the goods, which was about the 6th of November, 1876. Mrs. Jackson agreed to sell the stock to plaintiff, and both

she and her husband bound themselves not to engage in the same business for five years in Marquette, unless the plaintiff and his sons should go out of trade. The inventory of the goods was then taken, which took from the 10th to the 17th of November, during all which time the plaintiff's son assisted, and the plaintiff was at the store several times, and had access to the goods all the time, and opportunity to examine the same.

The plaintiff took possession of the stock purchased under the contract of sale on the 15th day of November, 1876, and was selling the goods on the 29th, when he executed to the defendant the notes for the purchase money, in pursuance of said contract. The plaintiff, after he took possession, carried on the business over four months, during which time he sold mostly staple goods to the amount of over $5600 at a profit of 15 per cent., and during the same period put into the store $1084 worth of new goods. He then made an assignment for the benefit of creditors, under which an inventory was taken, showing $23,000 worth of goods still on hand. He had not carried on the millinery business, being unable to make it pay.

The plaintiff subsequently made an arrangement through a friend, by which a house and lot belonging to his wife was turned over to his creditors, together with his other assets, in full of all his indebtedness; the house and lot claimed by plaintiff to be worth $3000. This arrangement was effected by defendants' buying the goods and the house, taking the latter at the estimated value thereof, and paying the rest of the creditors their respective shares thereof, and giving up to Collins' assignee, the notes the defendant held against Collins for the purchase price of the goods. Mrs. Collins contested this transfer of the house and lot, but under the legal proceedings taken by her she failed in her contest. See 43 Mich. 558. She succeeded however in depriving the defendant of the use of the property from April, 1877, to July, 1880, pending the litigation; and after the defendant obtained possession he sold the house and lot for $1500. The testimony further showed that about $12,000 worth of new goods had been put

into the store the fall the sale was made to plaintiff, and that the natural depreciation of the same and the rest of the goods, during the time the plaintiff had them, would be about $3000.

The declaration in the case avers that the consideration given was for the stock of goods, and the proofs admitted show it was for the goods and good-will of the defendant's business, he and his wife promising not to engage again in the same business in Marquette for five years if plaintiff continued there that length of time. This was claimed by defendant's counsel to be a fatal variance, and the testimony was objected to upon that ground. The court ruled otherwise. We think the defendant's objection well taken. Where fraud is alleged, the facts which are made the basis of the wrong should be proved as stated.

It nowhere appears in the declaration what part of the consideration was for the good-will of the defendant's business. This should have been averred in the declaration and shown on the trial before the damages plaintiff was entitled to, if any, could be properly ascertained. The considerable amount of damages claimed in the case and found by the jury, renders this point of importance to the defendant, and his fifth and seventh requests[1] should have been given to the jury.

It is claimed by defendant's counsel that the false representations alleged to have been made in this case, and upon which the plaintiff relies for his damages, as stated, are so

---

[1] The instructions requested were these:

5. The purchase alleged in the declaration is the purchase from Mrs. Jackson of a stock of goods for a certain price. The proof is that the purchase was that of a stock of goods and the good-will of an established trade, with the agreement that neither the defendant nor Mrs. Jackson should go into the same business in Marquette for a term of years, so long as the plaintiff or his sons remained in the business. The variance in that respect between the declaration and the proof is fatal, and the plaintiff cannot recover.

7. The purchase was that of a stock of goods and the good-will of the business, with Jackson's agreement not to go into the same business for a certain time. The sale of the stock was only a sale of the goods, and not of the good-will. There is no evidence how much the good-will was worth, or how much was paid for it ; and there is no basis upon which to estimate, as damages, the difference between the purchase price of the goods and the price at which they were sold, and no actual damages can be given.

vague and indefinite as to be almost incapable of proof, and that the evidence offered does not support the statements, even as averred; that the representations testified to by plaintiff, if proved, would not have entitled the plaintiff to recover. The opinion of the vendor of property he is selling, as to amount, quality or value, is frequently asked and usually given on sales, and is never actionable if no more than opinion is expressed and honestly given; and when the vendee sees the property, or has knowledge of it, or has opportunities for knowing, the vendor cannot be made liable. It is only when superior knowledge exists on the part of the vendor, and he knowingly gives a false opinion in regard to material facts, with the intention of defrauding the purchaser, that the latter can maintain an action. In other words, the expression of an opinion by the vendor can never be made actionable, if false, unless it be so strong and based upon such superior knowledge to the extent that it was relied upon as true, and reasonably so by the vendee, as a fact, and known to be thus relied upon by the seller. This was substantially so held in this Court in the case of *Picard v. McCormick* 11 Mich. 68, and in this case when formerly before this Court. Further than this we do not think safety will permit us to go.

It is not the policy of the law to compensate negligence, and it is the duty of the courts to see to it that parties are not permitted to profit therefrom. The questions whether or not the opinion given by the vendor in such a case is false, and to him known so to be, and to what extent it is relied upon without negligence upon the part of the vendee, must be determined by the jury upon the evidence in the case, under proper instructions from the court. We do not think, under the testimony in the case, it should have been taken from the jury; and no error was committed by the court in refusing so to do.

We have thus far considered the plaintiff's declaration, and the character of the averments therein contained.

Several objections were made to the plaintiff's proofs offered and received, on the ground that they did not sup-

port the averments contained in the declaration, and these objections, we think, were well taken. Very much of the testimony offered of the statements and representations alleged to have been made scarcely goes beyond the most ordinary commendations indulged usually on sales by owners of personal property, and should not have been permitted to go to the jury. The most casual observation of the goods made by a man of the plaintiff's intelligence, skill and experience could not have failed to qualify him to judge correctly of the truthfulness of the representations made by the defendant.

Under the testimony contained in the record it is difficult to see why the plaintiff was not sufficiently apprised of the amount, kind and quality of the goods purchased when the inventory was taken, and it would seem that under the circumstances the statements of the vendor could hardly have been much relied upon as of importance upon those subjects; and if the vendee, having such opportunities for information, failed himself to ascertain the facts, it may be well questioned whether he can shield himself from the consequences of such negligence by asserting reliance upon the opinions expressed by the vendee. *Slaughter v. Gerson* 13 Wall. 379; *Rockafellow v. Baker* 41 Penn. St. 319; *Brown v. Leach* 107 Mass. 364; *Long v. Warren* 68 N. Y. 426; Cooley on Torts, 487.

It was claimed on the trial, as one of the items of plaintiff's damages, that he had lost his house and lot in settling up and getting rid of his indebtedness to the defendant, and evidence was allowed to be given upon that subject, which was objected to by defendant's counsel, and the court overruled the objection. This was error. Nothing of this kind was stated as a ground of damages in the declaration; and the court should have also given the defendant's ninth and tenth requests upon that subject.[1] It was also error to give

---

[1] These requests were as follows:

9. Upon no state of facts testified can the plaintiff be allowed the value of the house and lot as damages in this case, under the declaration.

10. It appears that the house and lot did not belong to the plaintiff, and there is no evidence that he paid or agreed to pay anything for it, and no damages can be allowed on account of the house and lot.

those portions of the charge contained in the seventeenth and eighteenth assignments of error.[1]

There was no immediate or necessary connection between the fraud complained of in the declaration and that claimed by the plaintiff to have resulted in the loss of his house and lot.

The circuit judge charged the jury that "if, after consideration of all the facts and circumstances proved in this case, you believe from the evidence that the defendant was guilty of making the false representations alleged in the declaration in this case; that the plaintiff relied on them; that he made the purchase in consequence of those representations; and that he suffered damage,—you will find for the plaintiff, unless you find that a settlement was made between the parties, and in such case your verdict will be for the damages as I have indicated." This charge was excepted to, and properly so. It fails to inform the jury that they should find the representations were such that the plaintiff, under the circumstances, had the right to rely upon them. It also ignores the consideration of any alleged neglect on the part of the plaintiff, or any necessity of knowledge, on the part of defendant, of the falsity of the representations.

We do not think it necessary to consider the assignments of error further; for those already noticed,

The judgment must be reversed and a new trial granted.

The other Justices concurred.

---

[1] These were as follows:

17. That the court erred in charging the jury that "it makes no difference whether the house in this case belonged to Mr. Collins or belonged to his wife. If Mr. Collins procured that deed from his wife for the purpose of using it in case of a settlement, or in case he should decide to settle, that would make no difference, so far as any damages he would have to pay are concerned, whether Mr. Collins owned the money or somebody else owned the money; whether Mr. Collins owned the property or somebody else owned the property so used in making the arrangement, or in the attempt to carry out and effect any arrangement."

18. That the court erred in charging the jury as follows: "If you find that the actual damages sustained from the fraudulent sale of this property, if there was one, were equal to or exceeded the value of this property, then your verdict would be for the value of the property; but if you find that the difference between the goods as they were represented to be by Mr. Jackson, and the value as they actually were, was not equal to the value of this property, then your verdict would only be for so much as you should find the damage actually was."