JOHN H. HEITMAN, Appellant, v. WILLIAM J. CLANCY and MARGARET CLANCY, Appellees.

**Real property:** EXAMINATION BY PURCHASER: ESTOPPEL. Where one had a fair opportunity to inform himself regarding the title and value of land before purchasing it, and he made an examination, he cannot thereafter be heard to complain of these matters.

**Same:** CONTRACTS: PAROL EVIDENCE: VARIANCE. It may be shown by parol that a writing was not to take effect, or was subject to some condition not expressed therein, or was procured by fraud. Thus where plaintiff and defendants entered into a written contract for an exchange of properties it was competent for defendants, in an action for specific performance, to show that plaintiff represented that he had a buyer for his property to whom a sale would be effected before the contract was consummated, and that defendant would not be required to take the property.

**Same:** EXCHANGE OF PROPERTIES: FALSE REPRESENTATIONS: RESCISSION: EVIDENCE. Where plaintiff and defendants entered into a contract for the exchange of their properties, and plaintiff's agent at the time falsely represented that he had a purchaser for his property who would buy it at a price greater than that placed upon it in the contract of exchange and would take it before the contract was consummated, so that defendants would not be required to take the property itself, which they stated they did not want, but would receive the price therefor with the profit added; *Held*, that the loss of such profit was sufficient injury to sustain the claim of false representation, and to justify defendants in refusing to convey their property. It is also held that the evidence is sufficient to sustain the claim of fraud.

**Specific performance:** FRAUD OF BOTH PARTIES: RELIEF. Where the party seeking specific performance of a contract was guilty of fraud in procuring the same, he will not be entitled to relief on the ground that the other party also was guilty of fraud in the transaction. Thus where plaintiff's agent fraudulently represented to defendant that plaintiff had a purchaser for his property who would take it at a profit before the contract of exchange was consummated, and that defendant would not have to take the property but would

receive the consideration therefor with an added profit, the fact that defendant did not disclose the agent's representations to plaintiff would not entitle him to specific performance of the contract.

**Same:** FRAUD: REPRESENTATION OF FACT. The representation of plaintiff's agent that plaintiff had a buyer for the property he was exchanging with defendants, and that it would be sold and defendants would receive the consideration therefor before the contract was consummated and they would not be required to take the land, was a representation of fact.

**Same:** AGENCY: FRAUD: EVIDENCE. Evidence considered and held to show that the party who was acting for plaintiff in the exchange of the properties in question, and who made the alleged false representations, was acting as plaintiff's agent in the transaction and that both acted in concert for the purpose of defrauding defendants.

**Same:** FALSE REPRESENTATIONS: EFFECT. A false representation by the agent of one of the parties negotiating an exchange of properties will defeat specific performance of the contract at the suit of the party making the representation, even though the agent may also have represented the other party in a sale or exchange of his property; as a party will not be permitted in equity to reap any advantage from a false representation regarding a material fact.

*Appeal from Scott District Court.*—HON. WILLIAM THEOPHILUS, Judge.

TUESDAY, OCTOBER 6, 1914.

SUIT in equity for specific performance of a written contract for the exchange of appellant's land in Canada for appellees' house and lot in Davenport, Iowa, and asking that defendants be compelled to execute a deed to plaintiff for the Davenport property. Defendants asked affirmative equitable relief as to certain matters growing out of the transaction. The court found that the equities were with the defendants, dismissed plaintiff's petition, and rendered a decree for the defendants. Plaintiff appeals.—*Affirmed.*

*Henry Vollmer* and *William Hoersch,* for appellant.

*J. A. Hanley,* for appellees.

PRESTON, J.—There is no contention by appellant that appellees would not be entitled to the relief asked by them if it is found that plaintiff is not entitled to specific performance. The question is therefore, as to whether plaintiff is entitled under the record to specific performance. The plaintiff executed a deed to defendants for the Canada land, and defendants executed a mortgage thereon to plaintiff. This was done before the time for the performance of the contract. Defendants claim that certain representations were made by the agent for plaintiff, to be performed by plaintiff before that date, which were not carried out by plaintiff, and defendants refused to make a conveyance of their Davenport property.

The written contract was executed June 12, 1912, and was to be performed July 1, 1912. The substance of the contract is that plaintiff was to deliver a deed to defendants for a half section of land in Canada, and defendants were to convey to plaintiff their lot in Davenport, and that plaintiff was to assume a certain mortgage of $2,100 on the Davenport property and defendants were to execute a mortgage for that amount, to the plaintiff, upon the Canada land. The contract also provided that plaintiff and defendants were each to pay $100 to Muxfeldt for services rendered at the time the contract was executed, and that upon the completion and consummation of the sale and agreement plaintiff was to pay the further sum of $100 commission to Muxfeldt and defendants to pay him the further sum of $50.

Plaintiff alleges that he has complied with all the terms of the contract to be by him performed, and that he has always been willing, ready, and eager to perform his part of the contract. He does not allege that he was able to do so, but no point is made as to this by appellees. The defendants admit the execution of the contract, but deny that same is of any force. They say that at the time of the execution of the contract and the negotiations preceding one Carl Muxfeldt was the agent of the plaintiff, having authority to sell or trade the Canada land belonging to plaintiff; that as such agent Mux

feldt called at the home of defendants on several different occasions and suggested a trade of their property for the Canada land of plaintiff; that defendants positively refused to consider a trade of that character, and told Muxfeldt that under no circumstances would they be induced to buy or trade for Canada land; that as such agent he represented to defendants that plaintiff had sold or had a buyer for the Canada land at an advanced price, and that if defendants would sign a contract agreeing to make said trade or transfer, the title to the Canada land would never pass to defendants, as the land had already been sold, and that on July 1, 1912, the date when the deal was to be finally consummated, defendants would own nothing; and that they would thus sell their property and there would be a profit to the defendants in the transaction. Other representations are alleged in the answer, but defendants rely on the one just stated. There is little, if any, evidence to sustain the other alleged representations. Defendants say they relied upon the representations and agreements of said agent, and but for them would not have executed the contract. They set up the fraud as a reason why they should not be required to execute a conveyance of their property. The defendants admit that plaintiff executed the deed to them, and that they executed a mortgage back on the Canada land, and that these things were done before July 1st, but say that Muxfeldt told them these papers would have to be executed in order to carry out the plan; that before July 1st they learned that the representations and statements of Muxfeldt that the land had been sold to other parties were not true, and learned that plaintiff would not carry out that part of the agreement, and that thereupon defendants refused to execute a conveyance of their property.

For reply plaintiff denies all allegations of the answer not admitted; admits that Muxfeldt, on or about June 12, 1912, had the right to obtain a customer for the plaintiff to sell plaintiff's land in Canada; that while Muxfeldt obtained

the right from plaintiff to sell the Canada land he was the agent of the defendants; admits that he took possession of defendants' property and collected rent from the tenant; says that by their acts defendants ratified the acts of Muxfeldt and are estopped from denying that he was their agent; that plaintiff informed defendants prior to the signing of the written contract that defendants should investigate the real estate of plaintiff and the value thereof, and should not rely upon any representations as to its value; that he allowed defendants opportunity to make such investigation, and that defendants will not now be heard to say that they were deceived; that Muxfeldt was not authorized to make any fraudulent statements, and that if any were so made, they were not authorized and were beyond the scope of his authority; that plaintiff had no knowledge of said representations, and now repudiates any such made by Muxfeldt; that if the court finds that the contract is void and of no effect, defendants be required to convey to plaintiff the Canada land.

By its decree the trial court found that the equities were in favor of the defendants, and dismissed the petition; it further adjudged that plaintiff is liable to defendants for whatever rent plaintiff has collected for defendants' Davenport property, and ordered plaintiff to account to defendants therefor, and upon failure to account the defendants may have an accounting; that defendants should execute a reconveyance to plaintiff of the Canada land, and that plaintiff shall release, cancel, and satisfy the mortgage executed by defendants to plaintiff on the Canada land and to deliver the mortgage to defendants; that plaintiff vacate and surrender to defendants the possession of the Davenport property.

Some of the minor points will be first noticed before proceeding to the real contention of the parties.

I. Appellant contends that defendants had opportunity to inform themselves as to the title to the Canada land and

its value before the execution of the written contract, and by

not informing themselves cannot now complain. This is the rule in some cases where the party does examine for himself and the defects are obvious. *Shuttlefield v. Neil*, 163

**1. REAL PROPERTY: examination by purchaser: estoppel.**

Iowa, 470.   But in this case the defendants did not see the Canada land, nor did they investigate for themselves the title to or value of the Canada land.   Muxfeldt testifies that he told defendants not to take his word for what it was worth, but, "to go and inquire from Judge Roddewig, and you go to Ed Bischoff; he knows about the land up there; he made one deal for Mr. Heitman and a fellow up there now."   Plaintiff testifies that he told defendants before the contract was signed:

If you will go out and see the land, and then if we can agree we may make a deal. That is the way I said. There is no deal made today. That is the way I want it; when I want to make a deal I want to know what I am doing; I want to see what I am getting. Q. You had seen what you were getting, hadn't you? A. Yes, but I wanted them—

But, after all, the question as to value and title of the land is not now in controversy.   Although this matter was referred to in the answer, as before stated, there is no evidence in support of that issue.   The defendants now rely upon the statement or representation of Muxfeldt, which they say was a

**2. SAME: contracts: parol evidence: variance.**

part of the contract, but not included in the writing; that defendants were not to take the land because it had already been sold, or plaintiff had another buyer for it.   The plaintiff objected to some of the testimony for defendants as to this last point, on the ground that it varied the terms of the writing, but it has been repeatedly held that under such circumstances the actual agreement may be shown, and that the writing was not to take effect, or that it is subject to condition, or that the contract was procured by fraud.   See *Hinsdale v. McCune*, 135 Iowa, 682.

II. Appellant contends that defendants did not prove any injury, and did not prove that the Canada land was not worth full value. Under the contract the price of the half section of the Canada land was fixed at $11.25 per acre. And it is true there is no evidence that it was not worth that. But it is the claim of defendants that under the arrangement made with Muxfeldt, as agent for plaintiff, defendants were to sell their Davenport property, and that plaintiff had sold or had a buyer for the Canada land at a profit, and that the profit was to go to the defendants, and in that way defendants would, before the time for performance of the contract, not own the Canada land. If it was so represented to defendants, and it was not true, then the fact that it had not been sold to another would deprive the defendants of that profit. The testimony is that Muxfeldt represented to defendants that the Canada land had been sold, or that they had a buyer for it at $15 per acre.

3. SAME: exchange of properties: false representations: rescission: evidence.

But further than this defendants both testify that they told Muxfeldt emphatically that they did not want any Canada land, and would not consider a proposition of that kind if they had to take it. Mr. Clancy is a mail carrier in Davenport, and he and his wife testify that they knew enough about Canada land so that they did not want it. This testimony of the two defendants and their testimony in regard to the representations and the falsity thereof is without substantial dispute. Muxfeldt is the only one testifying on that subject for plaintiff, and he does not squarely contradict them. We think his testimony in regard to this matter is evasive. He testifies:

Redirect examination by Claus Ruymann:

Q. What representation did you make to Clancy and his wife? A. About the farm? We talked about the farm as we were going back. Q. At any time what representation did you make as to this Canada land? A. I told him that I thought I could make that trade for that about even, but I didn't know.

Mr. Hanley: I object to the question as incompetent, irrelevant, and immaterial, not proper rebuttal; and, if in the way of impeachment, the proper foundation has not been laid.

Q. What other statements did you make to Clancy or either of them? A. I didn't know whether Mr. Heitman had that land any more or not. I had to find out first. Q. Did you ever tell him they would make $1,200, or any other sum? A. That is the way Judge Roddewig figured it out. Judge Roddewig went and investigated that land. I don't know how, because I said: 'You go to Mr. Roddewig and find out.' He was on a trade, and we were pretty close to a deal, and then Mr. Roddewig rented that piece of property; and he said he thought he would be better off; he was getting $30 a month for the property, and didn't want land now, he says, so he would let that go.

It is true that plaintiff executed a deed to the defendants of the Canada land, and defendants executed a mortgage back to the plaintiff before July 1st, but defendants explain this by saying that Muxfeldt told them they had to do this in order to carry out the plan. They say that after that Muxfeldt put them off, and when they found that plaintiff did not have a buyer for the Canada land, and that plaintiff would not carry out that part of the agreement, defendants refused to convey their Davenport property. It may be that the trade as alleged by defendants was a foolish speculation, and that they are not a great success at such business, but they say they were deceived by the representations. That of course was the very purpose in making them.

Appellant says in argument that defendants concealed from him the fact that Muxfeldt had represented to them that they had a buyer for the Canada land. But there is no issue of that kind in the case, and plaintiff makes no claim that there was any false representations on the part of defendants. Plaintiff did see the Davenport property before the contract was signed, and he is now seeking to enforce the conveyance of it from defendants. But conceding for the sake of argu-

4. SPECIFIC PER-FORMANCE: fraud of both parties: relief.

ment that defendants, as well as plaintiff, were guilty of fraud in the transaction, the court will not inquire, in a case of this kind, which is the more guilty and render a decree for the other because he is less so.

It must be borne in mind that the parties are now in equity, plaintiff seeking a specific performance where the evidence shows, as we find, that plaintiff was guilty of fraud, and he says defendants were also guilty. The question is whether under such circumstances plaintiff may, in equity, ask and obtain a decree of specific performance, and this, too, where in such a case the chancellor has a discretion as to whether a specific performance will be decreed. We may therefore dismiss the claims now made in argument for the first time that the defendants were also guilty of fraud.

III. It is further said for appellant that the defendants recognized that they had purchased the Canada property by listing it with Rohlf & Struck, real estate agents. This is denied by defendants, and plaintiff has not established such fact. It is further said for appellant that the representations were not of an existing condition or present fact; that the testimony shows that Muxfeldt promised that on July 1, 1912, they would not get the Canada land, as by that time the land would be sold. This is not the record. The testimony, as before stated, is that the representation was that the land had been sold, or that plaintiff had a buyer for it at $15 per acre, and that such sale would be consummated before July 1st. This is a representation of a fact. It is further said by appellant that the written contract was read to the parties, and that there was no fraud or deceit practiced, and that therefore the defendants are bound by the terms of the contract. We have set out enough of the testimony to show that there was a fraud practiced; that false representations were made, and defendants claim that the writing did not contain all of the contract, and that they were induced by the fraud to execute the writing.

5. SAME: fraud: representation of fact.

IV. The real point in the case is as to whether Muxfeldt

was agent for plaintiff in regard to the alleged false representation, or whether he was acting for the defendants in the transaction. It appears that Muxfeldt was quite persistent in his efforts to obtain the contract and sell the properties. He received a commission from both parties, the larger from plaintiff. It is true that he did have the property of defendants for sale or trade, he also had the property of plaintiff for sale or trade. It is clear that Muxfeldt was guilty of fraud, and that the fraud was against the defendants in regard to plaintiff's property; plaintiff obtained the contract because of such fraud; he is now seeking to reap benefit therefrom by enforcement of the contract. There can be no question but that Muxfeldt was agent for plaintiff. Plaintiff admits it in his reply, and Muxfeldt, as witness for plaintiff, testifies:

6. SAME: agency: fraud: evidence.

Q. Your full extent of authority was to get the contract in the terms and conditions of this written contract? (Objected to as incompetent, irrelevant, and immaterial, not proper rebuttal, and an attempt to impeach his own witness.) Q. That was the only authority you had? A. To make that trade. Q. In accordance with that written contract? A. Why, they really made the agreements between themselves after they came up there. I introduced them to each other. Q. All the authority you had besides that was to get the men up to the office? (Objected to as leading, incompetent, irrelevant, and immaterial. Question withdrawn.) Q. And you reported the transaction or conversation between you and the Clancys to Mr. Heitman, didn't you, and told him that you had made the trade? A. That we could make it. They were to come up there. But I asked Mr. Clancy where he was going— Q. You told Mr. Heitman that you had made a deal for his Canada land with Mr. and Mrs. Clancy, didn't you? A. Do you mean before we went up there? Q. Yes. A. And I says we could make it; that they should come up there; and he asked me whether we were going up to Ruymann's office, and that would be the best because the mortgage was there. Q. You told him they would be there, and all he had to do was sign a contract with them, didn't you? A. They would be there? Q. Yes; you arranged for Mr. and Mrs.

Clancy to be at Ruymann's office, and you arranged for Mr. Heitman to be there, didn't you? A. After we got both sides' agreements what we were going to make, then we all agreed on it to meet there.

The plaintiff testified:

Q. Who made the negotiations leading up to the execution of this contract, you or some one else? A. Mr. Muxfeldt. I gave him the right after he came home. He wanted to know whether I had that Canada land that I would trade. Says I, 'Yes.' He would like to trade it for property. . . . Q. You also knew that he was going to negotiate for the sale of it? (Objected to as calling for an opinion of the witness. No answer.) Q. Did you know that he was going to negotiate for the sale or trade of that property for this Canada land of yours? A. He told me he was trying to trade; yes. . . . Q. Isn't it true that what you agreed to that day was the commission Mr. Muxfeldt demanded of you as your agent for making this transfer? A. Certainly. Q. He wanted $250, and you didn't want to pay him that? A. No. Q. How much did you want to pay him? A. We agreed I was to pay him $200. Q. What were you paying him that for? (Objected to as calling for a conclusion and opinion of the witness.) Q. Were you donating him that? A. If a man is doing any work, and I think it is worth it, I am willing to pay for it. Q. The amount that you did finally pay him, and that you owe him yet, if any, is for services rendered by him as your agent in this transaction between you and Mr. Clancy; isn't that true? A. They would be worth it; yes; I thought it would be worth it. . . . Q. You were willing when you signed this contract, to sign it and you did sign it freely, didn't you? A. Certainly. Q. Did you approve of what Muxfeldt had done in getting you and Mr. and Mrs. Clancy together on this trade? A. Otherwise I wouldn't accept it. Q. You did approve of his act, didn't you, in making this trade? A. Certainly; I accepted.

Muxfeldt had the agency for this Canada land from plaintiff at one time about six months before the Clancy transaction. Plaintiff qualifies to some extent, or attempts to do so, some of his evidence which we have just set out. There

is other evidence on the subject. From all of the evidence we are satisfied that Muxfeldt had apparent authority, if indeed he did not in fact have authority to act for plaintiff as he did. Plaintiff approved of what Muxfeldt had done. We are satisfied that plaintiff and Muxfeldt were acting together for the purpose of defrauding defendants.

The fact that Muxfeldt was agent for defendants in the sale or exchange of their property does not change the fact that he was employed by plaintiff. *Gate City Land Co. v. Heilman*, 80 Iowa, 477, 480. As before

7. SAME: false representa- tions: effect.

stated, plaintiff makes no complaint as to anything said or done by Muxfeldt in so far as Muxfeldt was acting for defendants. In regard to the representations made by Muxfeldt to defendants, as to the plaintiff's land, he was the agent for plaintiff to subserve the purposes of plaintiff and in a matter in which plaintiff was interested. As bearing upon this question, see *Gund Brewing Co. v. Peterson*, 130 Iowa, 301; *Riley v. Bell*, 120 Iowa, 618. The representations made by Muxfeldt were untrue and clearly fraudulent. Plaintiff may not reap any benefit therefrom in this equitable action. That the contract was procured by the false representation of a material fact is a defense to specific performance at the suit of the party who made the representation. 36 Cyc. 600. In general, a less flagrant case of fraud is required to prevent specific performance than to recover damages or to obtain rescission. *Schneider v. Schneider*, 125 Iowa, 1-16; 36 Cyc. 600. In the *Schneider* case it was said that any trace of unfairness or fraud will render specific performance impossible.

We conclude that the decree of the district court was right and it is therefore—*Affirmed*.

LADD, C. J., and EVANS and WEAVER, JJ., concur.