VAN CLEVE *v.* RADFORD.

1. FRAUD—MISREPRESENTATIONS—RECOVERY.
   A buyer of corporate stock cannot recover of the seller the money paid therefor on the ground of misrepresentations as to the earnings of the corporation where he knew precisely what the representation meant, how the conclusion therein stated was arrived at, and it did not mean, and was not, as to him, a representation that the earnings of the corporation were what he alleges was stated to him.

2. SAVING QUESTIONS FOR REVIEW—VARIANCE.
   An objection on the ground of variance between the declaration and proof must be made in the trial court.

3. APPEAL AND ERROR—REVERSAL—HARMLESS ERROR.
   A judgment will not be reversed, whatever the assignments of error, if a correct result has been reached upon undisputed facts and the applicable law.

4. SAME—VARIANCE—AMENDMENT—LIMITATIONS.
   Where a verdict should have been directed for defendant as

requested on the ground of variance, and the declaration could not have been amended so as to set up the cause of action proved, because of the statute of limitations, a judgment for defendant will not be reversed.

Error to Wayne; Rohnert, J. Submitted April 10, 1907. (Docket No. 49.) Decided July 1, 1907.

Case by John W. Van Cleve against George W. Radford, James W. Fales, Alexander McVittie, Frank N. Clark, and Anson Waring for false representations on the sale of corporate stock. There was judgment for defendants, and plaintiff brings error. Affirmed.

*Fred A. Baker* (*Albert B. Hall*, of counsel), for appellant.

*S. P. Bradley*, for appellee Radford.

*Maybury, Lucking, Emmons & Helfman*, for appellees McVittie and Fales.

OSTRANDER, J. Upon the second count of the declaration, which is framed upon the theory of affirmance by plaintiff of whatever contract he made (the first count was abandoned at the trial), there was a verdict and judgment for defendants. The averments are, in substance: That on May 15, 1892, defendants sold plaintiff 600 shares of the capital stock of a corporation known as the "Keeley Institute," and received from him as purchase price $15,000, being the par value of the stock; that certificates for said shares of stock were afterwards issued and delivered to plaintiff. The representations averred to have been made and relied upon are: That the capital stock of said corporation was $250,000, all paid in, the holders thereof subject to no further assessments or calls thereon; that defendants were owners and holders of the stock, their title thereto good, and they lawfully entitled to sell and transfer the same; and that the earnings of

said corporation had been and were so great that there was a net profit annually of 12 per cent. on the $250,000 of capital stock. The falsity of each of these representations is averred as follows:

"Whereas, in truth and in fact the authorized capital stock of said corporation was only $50,000, and of which only $30,000 had been paid in, and of which authorized and partly paid up capital stock the said 600 shares were not a part, and each and every share of said 600 shares of alleged stock was wholly unpaid, and they, the said defendants, were not the owners and holders of said 600 shares of stock, and they had no title to the same, * * * and the earnings of said corporation had been and were so small that they were no more than sufficient to pay the expenses of said corporation, leaving no net profits whatever."

It is averred that, if the representations made had been true, the stock would have been worth $15,000; that by reason of the falsity of said representations it was wholly worthless. The facts are that defendants had organized a corporation with a capital stock of $50,000. Articles of association were executed December 2, 1891, and filed with the clerk of Wayne county December 9, 1891. The purposes of the corporation, stated in the articles, were to establish a health institution in the State of Michigan for the treatment of patients suffering from opium, liquor, and tobacco habits or neurasthenia, according to the methods and treatment given to such patients by the "Leslie E. Keeley Company," and Dr. Leslie E. Keeley, of Dwight, Ill., by the administration and use of said Dr. Leslie E. Keeley's so-called chloride of gold remedies, and also for the sale of said remedies. For the right to use these remedies in Michigan, defendants, or some of them, had paid the institution at Dwight $30,000. Opening in December, 1891, at Northville, Mich., the institute had so succeeded that, with four patients in December, 1891, in March, 1892, it had 38 patients. Real estate had been bought which cost $2,500, and furniture had been added. Five thousand dollars had been borrowed of a

Detroit bank.  The average duration of treatment for a
patient was four weeks, the cost of remedies administered
about $15, the charge for treatment $25 a week.  Plain-
tiff was born in Ypsilanti, living there until he was 15
years of age.  His business experience had been varied
and extensive.  He went to Dwight, Ill., in November,
1891, leaving there December 5, 1891, after taking the
treatment.  He saw the large number of patients there,
and heard there were 600 of them in line.  He afterwards
corresponded with the Dwight institution about securing
the right to use the remedies in the State of Delaware.
From Dwight, he went to Ypsilanti.  He attended the
lecture of Dr. Keeley at the Y. M. C. A. in Detroit, De-
cember 26th or 27th, and attended the formal opening of
the Northville Institute, Dr. Keeley being present, the
next day.  He returned to New York early in 1892, came
back in March, and introduced a friend to the Northville
institution for treatment in April.  April 13th or 14th, he
and defendant Radford had some talk about engaging in
the business in Canada.  About April 21st, plaintiff came
to Detroit, saw Radford, and was told by him that it was
proposed to start other institutes in Michigan, and that, if
plaintiff would raise $50,000 in stock in Ypsilanti, they
would move the institute to Ypsilanti.  On April 25th,
Radford wrote and signed and gave to plaintiff, at his
request, a note addressed to plaintiff, reading:

"In answer to your inquiry, will say that the Keeley
Institute at Northville is now paying 12 per cent. on
$250,000."

Plaintiff wanted this statement to show to friends in
Ypsilanti, to which place he was himself urging that the
institution be removed.  Before arriving at the conclusion
stated in this writing, plaintiff and Radford figured over
the profits of the institution on the basis of 38 patients,
reaching the result of an income of $3,800 a month, ex-
penses $1,300 a month, profit $2,500 a month, or $30,000
a year.  The arrangement between plaintiff and defend-

ants was, in substance, incorporated in a written memorandum, reading:

"Mrs. Swift (whose property in Ypsilanti was purchased for the institution) sells her place to Co. on contract—$25,000 down, bal. $15,000 on or before one and two years, 6 per cent. (to be paid from first receipts of this institute). The present stockholders sell to your syndicate one-fifth interest in the Keeley Institute (to be removed to Ypsilanti) for $50,000 cash. Your syndicate loans to Co. $12,500 (one-half of down payment to Mrs. Swift) and takes the Co.'s note at 6 per cent. The present stockholders loan the same amount to Co. on same terms, for same purpose. These notes to. be payable pro rata out of first earnings of this Institute. Your syndicate and present stockholders to loan in equal portions sufficient to put Swift property in shape for business, the amount for that purpose being estimated not to exceed $5,000. The capital of the Co. to be increased to $250,000, or $500,000, as your syndicate may desire."

This arrangement was not in all respects performed, but pursuant thereto plaintiff secured subscriptions, including his own, to stock, and the institute was removed to Ypsilanti. The money proposed to be raised by plaintiff by sales of stock was to be paid to defendants, and not to the company. Plaintiff was to become manager of the company. He did become manager. On May 14, 1892, amended articles of association were executed, by the terms of which the capital stock was increased to 10,000 shares, or $250,000, held, as therein stated, by the defendants, and the place of business was changed to Ypsilanti. Whatever stock in the institution came to plaintiff or was issued in his name was dated June 15, 1892, and purported to be issued by a company having a capital stock of $250,000. The facts stated were all of them known to plaintiff when he subscribed for his stock and when he paid whatever sum he did pay as purchase money. Plaintiff not only failed to prove, but he disproved, the contract, and each of the representations, set out in the declaration. He was forced to, and does, rely upon the representation, not alleged, of the earnings of the institution at

Northville, which representation his testimony, he claims, tends to prove was false. This upon the theory that some of the expenses of the institution were fraudulently concealed. Whatever the writing and the statement contained therein may have meant to those to whom plaintiff exhibited it and whom he induced to engage in the enterprise ( *Coombs* v. *Radford,* 110 Mich. 192; *Glover* v. *Radford,* 120 Mich. 542), and whether it was a true or a false statement of fact, it is made entirely clear that he knew precisely what it meant, how the conclusion stated therein was arrived at, and that it did not mean, and was not as to him a representation, that the " earnings of said corporation had been and were so great that there was a net profit annually of 12 per cent. on the $250,000 of capital stock." The declaration gives no intimation that a recovery will be asked for on the sole ground that a representation was made to plaintiff that upon the basis of 38 patients, as the business was being conducted at Northville, a stated profit was being made, which representation was false, because the expenses figured and stated were not all of the expenses. The variance between declaration and proof is clear. Is it fatal ? The rule is that the objection of variance must be made in the trial court. It does not appear from the record that the question was raised except by a request to charge preferred by counsel for defendants :

" Plaintiff had full knowledge concerning the capital stock, and therefore there was no misrepresentation about it, and I further charge you that no such misrepresentation as is alleged concerning the earnings has been proved in this case. Therefore plaintiff cannot recover."

The judgment is for defendants, and the question is whether for any error pointed out it should be reversed. It should not be reversed, whatever the allegations of error, if a correct result has been reached upon undisputed facts and the applicable law. *Robinson* v. *Charles Wright & Co.,* 94 Mich. 283, 285. The request preferred should have been given, unless plaintiff by amendment

could set up the cause of action which he had proved. This he could not do, because it is a new and distinct cause of action which arose in 1892, which at the trial in 1905 was barred by the statute of limitations.

The judgment is affirmed.

McALVAY, C. J., and CARPENTER, GRANT, and BLAIR, JJ., concurred.