FISHER  v.  RADFORD.[1]

1. APPEAL AND ERROR—DECISION—REVERSAL—NEW TRIAL.
    Where a judgment for plaintiff is reversed because of a vari-
    ance between the declaration and proofs that cannot be
    avoided by amendment without introducing a new cause of
    action, and limitations have run against the action, no new
    trial will be ordered.

2. FRAUD—FALSE REPRESENTATIONS—PLEADING—VARIANCE.
    In an action for fraud consisting of false representations in-
    ducing the purchase of corporate stock, a judgment for plain-
    tiff is reversed because of a fatal variance between the decla-
    ration and proofs; Mr. Justice McALVAY, with whom con-
    curs Mr. Justice CARPENTER, writing for reversal on the
    ground that the representation as alleged was made by de-
    fendant directly to plaintiff, while that proved was a letter
    written by defendant to a third person and by him shown to
    plaintiff, and the statement in the letter did not correspond
    with the allegations; and Mr. Justice OSTRANDER, with whom
    concur Justices HOOKER and MOORE, writing for reversal on
    the ground that the representations were alleged to have been
    made to induce the purchase of stock in a concern in N.,
    while those proved were to induce the purchase of stock in a
    concern to be removed to and operated in Y.

Error to Wayne; Murphy, J.   Submitted October 15,
1907.   (Docket No. 46.)   Decided July 1, 1908.

Case by Fred E. Fisher against George W. Radford,
James W. Fales, Alexander McVittie, Frank N. Clark,
and Anson Waring for false representations on the sale
of corporate stock.   There was judgment for plaintiff,
and defendants bring error.   Reversed, and no new trial
ordered.

[1] Rehearing denied September 10, 1908.

*S. P. Bradley*, for appellant Radford.

*Maybury, Lucking, Emmons & Helfman*, for appellants Fales and McVittie.

*Fred A. Baker* (*Albert B. Hall*, of counsel), for appellee.

McALVAY, J. This suit was brought against defendants for false representations made on the sale of certain corporate stock. From a judgment for plaintiff, defendants bring error.

The principal and controlling question in the case is whether a verdict should have been directed for defendants on account of a variance between the declaration and the proofs. In the case of *Van Cleve* v. *Radford*, 149 Mich. 106, this court had under consideration a declaration in the exact language of the one in this case, as far as the allegations of false representations and fraudulent conduct of these defendants is concerned. And the crucial question in the case was whether there was a fatal variance between the declaration and the proofs. From the similarity of these declarations it is evident that the general features of the transactions are identical. The declaration in this suit contained two counts. The first count alleged the formation of a corporation known as the "Keeley Institute," setting forth its articles of association; that the capital stock of the company was increased by defendants and their associates without warrant, and for the purpose of fraud, from $50,000 to $250,000, and that defendants sold 100 shares for $2,500 to plaintiff, and that, to induce the plaintiff to buy the same, defendants fraudulently represented that their title to the stock was good, the shares legally issued, etc., and that on, to wit, the 15th day of May, 1892, and for a long time previous thereto, the net earnings of the corporation were 12 per cent. on $250,000, to wit, the sum of $30,000 per annum; that the increase of the capital stock was illegal and void; that the alleged stock dividend was fictitious, defendants had no right to the shares, and that the net earnings up

to and at the time of the sale were not 12 per cent. on $250,000; that there were no profits; that plaintiff relied upon these misrepresentations and bought the stock on the 15th of May, 1892, and he afterwards, upon the discovery of the fraud and on the 12th day of July, 1893, tendered the same back, etc. Inasmuch as plaintiff admits that this recovery in this case was upon the first count, it will not be necessary to give the allegations contained in the second count of his declaration. The gravamen of the charge is that defendants, by fraudulently representing to him that the net earnings of the corporation at the time of the sale and for a long time previous were 12 per cent. on $250,000, induced him to purchase and sold to him 100 shares of stock for the sum of $2,500.

We will briefly consider the sale as alleged and as proved. From a careful examination of the record, we find that among other facts the proofs establish that the sale made was a sale of one-fifth interest in this corporation for the sum of $50,000 to certain subscribers in the city of Ypsilanti, who in the record and correspondence are called a syndicate; that plaintiff was one of these subscribers; that if this sale was made, the business was to be removed from Northville to Ypsilanti, where certain property was to be purchased for the occupancy and use of the corporation; that a memorandum in writing of the agreement between the Ypsilanti parties and defendants was made as follows:

" D. L. QUIRK, Pres.          W. L. PACK, Cashier.
  "The First National Bank, Ypsilanti, Mich.   189–.
  "Mrs. Swift sells her place to Co. on contract, $25,000 down, balance $15,000 on or before one and two years, 6 per cent. (to be paid first from receipts of this institute). The present stockholders sell to your syndicate one-fifth interest in the Keeley Institute (to be removed to Ypsilanti) for $50,000 cash. Your syndicate loans to Co. $12,500 (one-half of down payment to Mrs. Swift) and takes the Co.'s note at 6 per cent. The present stockholders loan the same amount to Co. on the same terms for same purpose. These notes to be payable pro rata out of first earnings of this institute. Your syndicate and pres-

ent stockholders to loan in equal portions sufficient to put Swift property in shape for business, the amount for that purpose being estimated not to exceed $5,000. The capital of the Co. to be increased to $250,000 or $500,000 as your syndicate desire."

That plaintiff gave his check for $2,500 to Mr. Glover; that he intrusted the money in his hands, and was largely induced to enter the deal because Mr. Glover and other parties he had confidence in were interested; that Mr. Glover was active in bringing about this sale and change of location. The record further shows that the money paid by plaintiff and the other subscribers at Ypsilanti was not paid directly to defendants, but was paid into the hands of the cashier of the bank as trustee, who paid the whole amount to defendants in accordance with the proposition contained in the following letter:

"The First National Bank,
          "Ypsilanti, Mich., May 14, 1892.
"Geo. W. Radford,
          "Detroit.
    "Dear Sir: Yours of the 12th recd. It will be impossible for me to get in today. I am on the sick list—in bed yesterday. I inclose you names of our stockholders, the list may be changed (added to) before the stock is issued. We will pay the money in to our bank here to Mr. W. L. Pack, cash., as trustee and take his receipt. Amount to be delivered to you on receipt of stock certificate, which will, I suppose, be satisfactory. Everything progressing nicely.
                    "Yours truly,
                    "J. W. Van Cleve.
        "Daniel L. Quirk.
        "Helen C. Swift.
        "Henry P. Glover.
        "John W. Van Cleve.
        "Charles E. King.
        "Thomas W. McAndrew.
        "Carlisle P. McKinstry.
        "Frederick E. Fisher.
        "John W. Watling.
        "Clark S. Wortley.
        "F. H. Pease."

Plaintiff's money was put into this fund by Mr. Glover who testified:

"I understood that we were paying or about to pay $50,000 for a one-fifth interest for what they had paid $30,000 for."

He also testified that the unsigned memorandum given above was correct, and, further:

"I understood that they were to increase the capital stock to $250,000; that was part of the arrangement. No more money was to be paid in to the company. We paid in $50,000 according to that memorandum for a fifth interest, and the Detroit stockholders were to have it."

Mr. Van Cleve, a witness for plaintiff, testified:

"Mr. Fisher (plaintiff) was one of the parties. He was one of the Ypsilanti parties that subscribed. He was one of the parties that was to buy one-fifth interest for $50,000."

Relative to the whole sale he testified:

"*Q.* Was the whole sale conditioned upon your raising $50,000?

"*A.* $50,000; yes, sir, that was the proposition.

"*Q.* And no separate single sale to any one individual?

"*A.* I don't know of any.

"*Q.* What is that?

"*A.* No.

"*Q.* Was it to be all one transaction—all consummated at one time?

"*A.* Yes, sir; I suppose so."

Mr. Van Cleve was the person most active in bringing about this sale and removal. He was a subscriber and resided at Ypsilanti. After the removal to Ypsilanti he became manager of the business. The allegations in the declaration relative to this sale gave no notice to defendants of the transaction proved. In considering the fraudulent representations it will not be necessary to refer to the allegations relative to increasing the capital stock, or the title to stock issued to plaintiff, because both are relied upon as implied warranties.

It appears from the record that the only express fraudulent representation claimed by plaintiff which induced him to enter into this purchase was a certain letter written by defendant Radford to Van Cleve as follows:

"Detroit, April 25, 1892.

" J. W. VAN CLEVE,
            "Ypsilanti.
    "*Dear Sir:*  In answer to your inquiry, will say that the Keeley Institute at Northville is now paying 12 per cent. on $250,000.
                    "Yours most truly,
                        "GEO. W. RADFORD."

Plaintiff saw this writing in the hands of Mr. Glover, and read it. The specific allegation contained in the declaration is:

"And they did further fraudulently and corruptly and with intent to cheat and defraud said plaintiff, and to induce him to buy and pay for said shares of stock, represent to said plaintiff that at the time of said sale, to wit, on the 15th day of May, 1892, and for a long time previous thereto, the net earnings of said corporation were twelve per cent. on $250,000, to wit, the sum of $30,000."

The letter relied on was sent to Van Cleve, who, as appears from the case of *Van Cleve* v. *Radford*, supra, had full knowledge of all the facts. Van Cleve had no talk with, and made no representations to, plaintiff concerning this letter, nor did any other person. The allegation of the declaration is that this representation was made directly by defendants to plaintiff. The statement of the letter is that "the Keeley Institute at Northville is now paying 12 per cent. net," etc. No statement in writing to a third person is referred to in the declaration, nor does the statement as made in the letter correspond with the allegation concerning it in the declaration. *Collins* v. *Jackson*, 54 Mich. 186; *Hubbard* v. *Long*, 105 Mich. 442, and cases cited; *Bilsborrow* v. *Warner*, 117 Mich. 506.

The proofs of fraudulent representations do not support such allegations. The variance was fatal, and could not

be cured by amendment. The court was in error in not directing a verdict for the defendants as requested.

The judgment of the circuit court is reversed and set aside, and, as the cause of action which plaintiff's proof tended to establish is barred by the statute of limitations, no new trial will be granted.

CARPENTER, J., concurred with McALVAY, J.

OSTRANDER, J. It was held in *Van Cleve* v. *Radford,* 149 Mich. 106, that none of the representations alleged to have been made to plaintiff were proved; which involved the finding, not that defendant Radford did not give to plaintiff a written statement—an apparent representation —that the institution at Northville was paying 12 per cent. net on $250,000, but that this statement, requested by Van Cleve, and used by him to show to others, was not, to him, a representation of the fact stated. It does not follow that it was not a representation to the plaintiff in this case upon which he had the right to and did rely, to his injury. It is true the statement is addressed to Van Cleve, who was promoting the increase of capital and the removal of the institution to Ypsilanti. It is equally true that the jury might have found from the testimony that it was made for the purpose of having it shown to those whom Van Cleve should solicit to invest money in the venture and to induce such persons to invest. It was therefore a representation made to the plaintiff by defendant Radford. The declaration sets out the representation. If plaintiff relied upon it, if he parted with his money to the defendants, and if the representation was false, it is immaterial whether his money was placed with the money of others in effecting a transfer of an interest in the institution. Stock was to be, and was in fact, issued, and plaintiff was to have and he received his proper number of shares. I am of opinion that the case is not ruled by *Van Cleve* v. *Radford.*

The fact that plaintiff was a member of the Ypsilanti syndicate is not decisive of his right to recover. I know

of no rule of law which imputes to all of the members of a syndicate formed to purchase property the knowledge of each of the members. Van Cleve was an active promoter of the venture. He may have had knowledge of the business which the others did not possess. I do not understand that because a man induces me to invest money by untruthfully representing conditions, the fact that he also joins in the adventure makes him my agent and charges me with knowledge of a fraud in which he participates, or binds me by his knowledge that representations made to me by others are untrue. Such a rule would relieve wrongdoers if one of their number, or if a confidant, acted with those defrauded. But I concur with Mr. Justice MCALVAY in holding there was a fatal variance between the case set out in the declaration and the case proved. Counsel for appellee are clearly right when they say that all of the representations alleged need not be proved. I do not place my concurrence upon the ground that plaintiff did not prove that the false representation alleged was made and was relied upon, but upon the ground that what he and his associates were to receive for their money was not stock in the Northville concern but stock in a concern to be removed to and to be operated in Ypsilanti. The action is case for damages for fraud. It is not claimed that plaintiff would have invested in the stock of the corporation except upon the consideration that it should carry on its business at Ypsilanti. I am not able to distinguish the case upon this point from *Collins* v. *Jackson*, 54 Mich. 186.

HOOKER and MOORE, JJ., concurred with OSTRANDER, J.